0507

Annie J. BAKER, Respondent-Appellant, v. Howard E. BAKER, Sr., Appellant-Respondent.

(332 S. E. (2d) 550)

Court of Appeals

*J. D. Todd, Jr.*, of *Leatherwood, Walker, Todd & Mann*, Greenville, *for appellant-respondent.*

*James H. Cassidy*, of *Robertson & Cassidy*, Greenville, *for respondent-appellant.*

Heard March 19, 1985.

Decided June 20, 1985.

SHAW, Judge:

Respondent Annie J. Baker petitioned the family court to increase appellant Howard E. Baker's periodic alimony payments based on changes in her circumstances and his ability to pay. The court awarded an increase in payments and attorney's fees. We reverse.

In appeals from family courts this court can make findings of fact in accordance with its own view of the preponderance of the evidence. *Mitchell v. Mitchell*, 283 S. C. 87, 320 S. E. (2d) 706, 708 (1984); *Townes Associates, Ltd. v. City of Greenville*, 266 S. C. 81, 221 S. E. (2d) 773, 775 (1976).

In 1977 Mr. and Mrs. Baker were divorced and Mr. Baker was ordered to pay $950 per month alimony. In 1979 Mrs. Baker petitioned for a modification and the award was increased to $1,150 per month plus part of bonuses. In 1981 Mrs. Baker filed this petition for a modification and the award was increased to $1,475 per month plus part of bonuses. Mr. Baker is a textile engineer with Milliken and Company. Since 1979 his salary increased from $91,469 to $112,125 and rental income increased from $1,420 to $8,346. Mrs. Baker, 56, works at a Wal-Mart store and earns the minimum wage. Since 1979 she bought a $51,000 house, borrowed $14,000, and began treatment for alcoholism.

I

"Wherever any [spouse] ... has been required to make ... periodic payments of alimony and the circumstances of the parties or the financial ability of the spouse making the periodic payments shall have changed ... either party may

apply to the court ... for an order and judgment decreasing or increasing the amount of such alimony payments ... and the court ... shall make such order and judgment as justice and equity shall require ..." S. C. Code Ann. § 20-3-170 (1976 & Supp.). The family court based its second increase in alimony on the following changes: (1) Mrs. Baker's new debts, (2) inflation, and (3) Mr. Baker's increased income.

Unwarranted debts, without more, are insufficient to ██ establish changed circumstances or justify an increase in alimony. The fact Mrs. Baker has gone further into debt merits only minimal consideration in light of the (1) court's observation some of her "obligations are a result of financial irresponsibility and foolish borrowing," (2) evidence she owes $1,500 to clothing stores, and (3) lack of evidence her normal living expenses have increased. *See Von Herberg v. Von Herberg*, 6 Wash. (2d) 100, 106 P. (2d) 737, 742 (1940); *Disney v. Disney*, 121 Cal. App. (2d) 602, 263 P. (2d) 865, 873 (1953).

Moreover, inflation, without more, is insufficient to █ establish changed circumstances or justify an increase in alimony. Inflation affects both spouses; when Mrs. Baker's cost of living increases, Mr. Baker's cost of living also increases. *See Goldberg v. Goldberg*, 30 Ill. App. (3d) 769, 332 N. E. (2d) 710, 713 (1975); *Bellow v. Bellow*, 94 Ill. App. (3d) 361, 50 Ill. Dec. 656, 419 N. E. (2d) 924, 929-930 (1981).

Finally, while increased income may establish a ██ change in the financial ability of the spouse making support payments, equity does not necessarily require a corresponding increase in alimony. Where an award of alimony is adequate to maintain a spouse at the standard of living to which he or she was accustomed before divorce, a family court is not required to increase alimony on the basis of increased income alone. *See Burr v. Burr*, 313 Mich. 330, 21 N. W. (2d) 150, 151 (1946) (" 'alimony ... is ... based on the underlying principle that it is the duty of the husband to support his wife, not necessarily to endow her' "); *Kaiser v. Kaiser*, 290 Minn. 173, 186 N. W. (2d) 678, 684-686 (1971). *See also* Clark, *Domestic Relations*, § 14.9, at 461 ("[t]he purpose of alimony is to care for the wife's needs after divorce, not to provide her with a lifetime profit-sharing plan").

## II

The family court ordered Mr. Baker to pay Mrs. Baker's attorney's fees of $2,900 and costs of $102 because Mrs. Baker "is in serious financial condition" and Mr. Baker has "superior financial ability." Although an award of attorney's fees is discretionary with the family court, on appeal it can be set aside if abuse of discretion is shown. *Smith v. Smith*, 253 S. C. 350, 170 S. E. (2d) 650, 653 (1969). At the outset we question the fairness of such a high bill in a case where the only issue was changed circumstances over a two-year period. *See Robinson v. Robinson*, 277 S. C. 102, 282 S. E. (2d) 861, 861 (1981). Financial ability is not one of the main factors to be considered in awarding attorney's fees. *See Nienow v. Nienow*, 268 S. C. 161, 232 S. E. (2d) 504, 510 (1977). Nevertheless, even assuming the bill is fair, we hold Mrs. Baker responsible for half of it. *See Calcutt v. Calcutt*, 282 S. C. 565, 320 S. E. (2d) 55 (Ct. App. 1984).

Reversed.

BELL, J., concurs.

GARDNER, J., dissents.

GARDNER, Judge (dissenting):

The majority opinion reverses a lower court order which required Mr. Baker to increase his alimony payments to his former wife in an amount equal to 5.9 percent[1] of the increase in his income since alimony was last set.

After a thirty-one year marriage, during which Mr. Baker was educated at college as a textile engineer and several children were born and reared, the Bakers were divorced in 1977; it appears from the record that the amount of alimony set in the 1977 order was the result of an agreement between the Bakers. Mrs. Baker subsequently obtained an increase of alimony on February 14, 1979. The appealed order of August 24, 1982, increased the monthly alimony payments required of Mr. Baker by $325.

The period involved in this appeal is from February 14, 1979, to August 24, 1982. The rate of inflation during this

---

[1] After tax deduction.

period was perhaps the highest in the history of our country. In 1979 the rate of inflation was 13.3 percent; in 1980, 12.4 percent; in 1981, 8.9 percent; and in 1982, 3.9 percent.[2] The purchasing power of the dollar decreased during this period more than 36 percent.

Since 1979, Mr. Baker's salary has increased from $91,469 to $112,125 and his rental income has increased from $1,420 to $8,346, a total increased earning of $27,582. By contrast Mrs. Baker's income has remained fixed. She earns a minimum wage when working.

Admittedly, Mrs. Baker began to suffer from the disease of alcoholism during the late years of this marriage. She was arrested once because of being intoxicated. She was, however, voluntarily hospitalized at Brookwood Baptist Hospital, an alcoholic treatment center, on April 12, 1982, and at the time of the hearing had not drunk alcohol since her hospitalization. Alcoholism is a chronic disease; a chronic disease is a lifetime disease; only in the last few years has the medical profession been able to deal successfully with alcoholism but the treatment now is successful in most cases. Mrs. Baker attends four meetings of Alcoholics Anonymous each week. Although her disease is chronic, the record reflects that she has sought medical help and is doing all within her power to be a recovering alcoholic; she continues to take advantage of the Brookwood Baptist Hospital. The writer commends Baptists for this outreach program.

The Bakers were married when they were nineteen years of age. Mrs. Baker worked as a beautician while Mr. Baker was earning his engineering degree. After Mr. Baker graduated from college and the birth of their children, Mrs. Baker became a homemaker, with all the responsibilities incident thereto. Mr. Baker became a successful engineer. After thirty-one years, the marriage turned sour and they were divorced. Mrs. Baker, understandably this late in her life, can earn only minimum wages as a salesperson in retail outlets; long ago she gave up cosmetology and is not now licensed.

The majority opinion is based on two, untenable I think,

---

[2] See March 1985 Report of the Joint Economic Committee of the U. S. Congress.

propositions, *viz.*, (1) that inflation, without more, is insufficient to establish changed circumstances, and (2) that equity and justice do not in this case require the increase in alimony thought to be equitable and just by the trial judge.

I

It is in decisions such as my colleagues of the majority would publish that new judicial attitudes may develop and this, in this instance, I think, is dangerous to our society; here profound social values are at stake.

Let us assume for a moment, even though the assumption is without merit, that the appealed order is based upon inflation alone. Then let us address the holding that 36 percent inflation, and the corresponding decrease of the purchasing power of the dollar, affected Mr. and Mrs. Baker alike; this is the thesis of the majority opinion. And it is illogical *per se*. After the runway inflation of the subject period, Mrs. Baker's then alimony could purchase only 64 percent of the needs of life as contemplated by the learned trial judge when the alimony amount was set on February 14, 1979; this order was not appealed. Mrs. Baker is on a fixed income. On the other hand Mr. Baker, because of his college education, lovingly given him by Mrs. Baker, enjoys an ever expanding income in the upper 1 percent of the people of this rich country. Does equity and justice speak as the majority opinion does in holding that a 36 percent reduction in real income is equal to a huge increase? Not to this judge does his conscience and sense of equity and justice so speak.

Moreover, the majority's view is inconsonant with the rationale of both of our appellate courts noted in the case of *Nelson v. Merritt*, 281 S. C. 126, 314 S. E. (2d) 840 (1948).

II

My brethren of the majority admit that increased income is by statute spelled out as a grounds for increased alimony. Inexplicably, they then hold that a 36 percent diminution in the value of the alimony permits the retention of a living standard established by the unappealed order of 1979. The contradiction is obvious. Moreover, the majority opinion maintains that its holding comports with its sense of justice and equity; it does not with mine and that of the learned trial judge.

Nor does the writer sympathize with the view that the trial judge awarded an increase in alimony because of debts brought about by Mrs. Baker's illness. The learned trial judge explicitly discounted the effect of her illness and sometimes bad business management before making the award of increased alimony; in this respect the majority opinion misconstrues the appealed order. I would also observe the poignant fact that Mrs. Baker has spent thousands of dollars on her young, recently emancipated, sons who came to live with their mother for awhile. Ironically, Mr. Baker, with his large income, is content to support the young child of his new wife.

The comment of the majority opinion about a $50,000 home, heavily mortgaged, in which Mrs. Baker lives causes the writer to wonder why this is so important when Mr. Baker obviously lives with great opulence, a privilege Mrs. Baker does not now enjoy, though she was accustomed to living in much better circumstances.

Finally, the writer is concerned about the invasion of discretionary powers vested in the trial judges of this state, who see witnesses, hear witnesses, judge their demeanor and in so doing seek to render justice. Trial judges enjoy benefits that we, who deal with cold paper and records, do not have in our search for justice. Appellate judges, in the writer's opinion, should give great effect to the exercise of discretion by those eminent members of the judiciary who see and hear witnesses and from these experiences have senses of judgment which we, under the circumstances, cannot possess. I cannot endorse the intrusion into the exercise of discretion and justice made by Judge Johnson in this case. I would affirm the appealed order.