0578

Guy A. CALVERT, Jr., Respondent, v. Patricia B. CALVERT, Appellant, and Patricia B. CALVERT, Appellant, v. PATHOLOGY ASSOCIATES OF LEXINGTON, P.A., Respondent.

(336 S. E. (2d) 884)

Court of Appeals

*Jan L. Warner*, Sumter, and *C. Dixon Lee, III*, Columbia, *for appellant.*

*Edmund H. Monteith* of *Monteith & Monteith*, Columbia, *for respondents.*

Heard Oct. 23, 1985.

Decided Nov. 14, 1985.

GOOLSBY, Judge:

In this domestic case, we are asked to determine whether *res judicata* principles barred the respondent Guy A. Calvert, Jr., M.D., from questioning the validity of using the cost of living index for determining periodic automatic increases or decreases in the amounts of alimony and child support due the appellant Patricia B. Calvert. We are also asked to determine whether a change in circumstances occurred since the entry of the divorce decree that warranted the family court reducing the amounts of alimony and child support Dr. Calvert is to pay Mrs. Calvert. We reverse.

The Calverts were divorced on December 28, 1976, after a twenty-five year marriage. Mrs. Calvert received custody of the parties' two minor children. The divorce decree incorporated and "made a part [there of] . . . as if it were set forth

[therein] verbatim" a settlement agreement executed by Dr. and Mrs. Calvert twenty days earlier and found by the family court to be "fair under the circumstances."

The settlement agreement expressly recited that both parties had been represented by "independent attorneys" in the negotiations leading up to the settlement agreement, that the settlement agreement had been fully explained to them, and that they both were fully aware of the settlement agreement's contents and "of its legal effect."

One paragraph of the settlement agreement reads in part:

> It is agreed that the alimony and support payments called for hereby will be increased or decreased if the ... cost of living index ... shows an increase or decrease from the level of such index as of October 1, 1976. For the purpose of increasing or decreasing the alimony and child support provided hereby, this instrument shall be reviewed as of October 1 of each even numbered year and the payments to the wife, alimony and child support, shall be increased or decreased for the next two years by the same proportion as the said index shall have increased or decreased from its October 1, 1976, level....

The settlement agreement required Dr. Calvert initially to pay $1,000 a month in alimony and $500 a month for each child in child support until the child became emancipated. Upon the emancipation of a child, the settlement agreement obligated Dr. Calvert to pay Mrs. Calvert an additional $250 each month in alimony.

Neither party appealed the family court's divorce decree incorporating the settlement agreement.

Five years after the divorce decree was entered, Dr. Calvert brought the instant action. In one cause of action, he sought to delete from the settlement agreement the provision requiring the use every two years of the cost of living index for determining the amounts of automatic increases or decreases in his alimony and child support payments. His petition alleges the "cost of living index is not a valid basis for normal cost of living increases and should be stricken from the Agreement." In other causes of action, Dr. Calvert sought to terminate or, in the alternative, to reduce the

amount he was required to pay each month in alimony and sought to reduce the amount he was required to pay each month in child support.

Mrs. Calvert answered Dr. Calvert's petition alleging that *res judicata* principles precluded Dr. Calvert from litigating the question regarding the validity of using the cost of living index to determine the amounts of periodic automatic increases or decreases in Dr. Calvert's alimony and child support obligations. She also denied Dr. Calvert was entitled to reductions in the amounts the settlement agreement required him to pay in alimony and child support each month.

Between the entry of the divorce decree in 1976 and the date of the hearing on Dr. Calvert's petition in 1983, one child became emancipated and the cost of living, according to the index, rose 69.93 per cent. As a consequence, Dr. Calvert at the time of the hearing was paying Mrs. Calvert monthly sums of $1,961.82 in alimony and $849.65 in child support.

In its order, the family court ignored Mrs. Calvert's *res judicata* defense and determined the cost of living index to be an unreasonable basis on which to base either increases or decreases in alimony and child support. It therefore deleted the cost of living index provision from the settlement agreement.

The family court also held the settlement agreement modifiable as to alimony and child support. It then found the existence of a change in circumstances and reduced the amounts of Dr. Calvert's monthly alimony and child support payments to $1,500 and $750, respectively.

The following provision, which forms a part of the paragraph quoted above, provides, as we read its order, the asserted basis for the family court's conclusion that the settlement agreement could be modified by eliminating therefrom the cost of living index provision:

> [I]f the husband's income shall decrease materially through no fault of his own, including retirement, he shall have the right to apply to a Court of competent jurisdiction [for] such relief as may be justified including a reduction in alimony and/or child support.

The change in circumstances found by the court to have occurred since 1976 when the divorce decree was entered was

the reduction in Dr. Calvert's income and the increases in his alimony and child support payments resulting from the operation of the cost of living index provision contained in the settlement agreement.

## I.

We address first the question of whether *res judicata* principles precluded Dr. Calvert from attacking the validity of using the cost of living index to determine periodic automatic increases or decreases in the alimony and child support due Mrs. Calvert.

Where the subject matter is the same, the judgment in former proceedings involving the same parties or their privies absolutely bars litigation in subsequent proceedings not only of the issues actually determined in the former proceedings but also of the issues that could properly have been raised and determined in the former proceedings. *Taylor v. Taylor*, 241 S. C. 462, 128 S. E. (2d) 910 (1962); *Melton v. Melton*, 229 S. C. 85, 91 S. E. (2d) 873 (1956).

Here, obviously, there is identity of parties in the two proceedings. There is also identity of the subject matter. Both proceedings concern Dr. Calvert's responsibility to pay alimony and child support. *See McLeod v. Sandy Island Corp.*, 264 S. C. 463, 215 S. E. (2d) 903 (1975).

Although no question was raised in the former proceedings by either party regarding the validity of employing the cost of living index as the means of determining periodic automatic increases or decreases in the amounts of alimony and child support Dr. Calvert would be required to pay after entry of the divorce decree, clearly the question could have been presented by either party to the family court for decision. Dr. Calvert, therefore, was barred from litigating the issue of its validity.

We hold, then, that the family court erred in failing to apply Mrs. Calvert's defense of *res judicata* and in striking the cost of living index provision from the settlement agreement. It should not have considered the question of whether the use of the cost of living index in determining periodic automatic increases or decreases in Dr. Calvert's alimony and child support payments was valid.

In so holding, we note Dr. Calvert does not contend he was incompetent when he executed the settlement agreement.

*Cf. Anderson v. Anderson,* 284 S. C. 487, 327 S. E. (2d) 355 (Ct. App. 1985), *appeal dismissed,* 285 S. C. 275, 328 S. E. (2d) 481 (1985) (doctrine of *res judicata* is no defense to direct action to set aside consent order incorporating settlement and separation agreement executed while husband was incapacitated because of drinking problem and emotional instability). He also does not contend the divorce decree was tainted by either fraud or collusion. *Cf. Arnold v. Arnold,* 285 S. C. 296, 328 S. E. (2d) 924 (Ct. App. 1985) (doctrine of *res judicata* does not preclude collateral attack on judgment obtained by fraud); 46 Am.Jur. (2d) *Judgments* § 473 at 638 (1969) (judgment obtained by collusion may not be used as a basis for the application of the doctrine of *res judicata*).

Also, neither *Condon v. Condon,* 280 S. C. 357, 312 S. E. (2d) 588 (Ct. App. 1984), as Dr. Calvert contends, nor *Kane v. Kane,* 280 S. C. 479, 313 S. E. (2d) 327 (Ct. App. 1984) controls the conclusion we must reach in this instance. In those cases, the settlement agreements did not enjoy, as this one does, prior court approval.

Finally, we do not think the provision allowing the family court simply to reduce Dr. Calvert's alimony and child support payments where he suffered a material decrease in income "through no fault of his own" provides a basis on which the family court could strike the cost of living index provision from the settlement agreement.

## II.

It is unclear, however, whether the family court, in reducing Dr. Calvert's alimony and child support payments, relied upon the provision that specifically empowers the family court to reduce the amounts of his alimony and child support payments upon a showing by Dr. Calvert that his income, through no fault of his own, has materially decreased. Although the family court found as a fact that Dr. Calvert, since the entry of the divorce decree, suffered "a material decrease in [his] income, through no fault of his own," it also considered another circumstance. This circumstance is the several increases brought about by the operation of the cost of living index provision of the settlement agreement in the amounts of alimony and child support Dr. Calvert is required to pay each month under the divorce decree.

Thus, it would appear that, despite language in the settlement agreement limiting modifications in alimony and child support payments to reductions based on a material decrease in Dr. Calvert's income arising "through no fault of his own," the family court considered both the amount of alimony and the amount of child support subject to being decreased for reasons other than for the one specified in the settlement agreement.

We recognize that child support is always modifiable upon a proper showing of a change in either the child's needs or the supporting parent's financial ability. *Smith v. Smith*, 275 S. C. 494, 272 S. E. (2d) 797 (1980), S. C. Code of Laws § 20-3-160 (1976); *see* 24 Am. Jur. (2d) *Divorce and Separation* § 844 at 958 (1966). But whether the family court in this instance had jurisdiction to alter the amount of alimony Dr. Calvert is required to pay where the changed circumstances involve something other than a material decrease in his income "through no fault of his own" is a question we find unnecessary to reach. *See Darden v. Witham*, 258 S. C. 380, 188 S. E. (2d) 776 (1972); *Fender v. Fender*, 256 S. C. 399, 182 S. E. (2d) 755 (1971); *Jeanes v. Jeanes*, 255 S. C. 161, 177 S. E. (2d) 537 (1970); *Ex Parte Jeter*, 193 S. C. 278, 8 S. E. (2d) 490 (1940); 24 Am. Jur. (2d) *Divorce and Separation* § 670 at 787 (1966); 27A C. J. S. *Divorce* § 238d at 1119 (1959); *cf.* S. C. Code of Laws § 20-3-170 (1976) (family court may increase, decrease, or terminate alimony payments where either there are changed circumstances or there is a change in the supporting spouse's financial ability; *Moseley v. Mosier*, 279 S. C. 348, 306 S. E. (2d) 624 (1983) (parties may contract concerning alimony and, upon court approval, the agreement is modifiable unless its terms unambiguously stipulate the agreement may not be altered). We assume, then, without deciding, that both the amount of alimony and the amount of child support were modifiable on a showing of changed circumstances, including a material change in Dr. Calvert's financial ability.

This court in an equity case tried before a judge alone may determine the facts in keeping with its own view of the preponderance of the evidence. *Lyvers v. Lyvers*, 280 S. C. 361, 312 S. E. (2d) 590 (Ct. App. 1984); *Cooksey v. Cooksey*, 280 S. C. 347, 312 S. E. (2d) 581 (Ct. App. 1984). In our view,

the record does not support a finding of changed circumstances justifying reductions in Dr. Calvert's alimony and child support payments.

We disagree first with the family court's finding that Dr. Calvert, since the entry of the family court's order in 1976, suffered such a decrease in income that reductions were warranted in the alimony and child support payments the settlement agreement and divorce decree required him to pay.

Generally, to warrant a modification in either alimony or child support, the change of circumstances must be either substantial or material. 27A C. J. S. *Divorce* § 239 at 1128 (1959); 67A C. J. S. *Parent & Child* § 83a at 417 (1978). The mere fact that a supporting spouse's salary or income has been reduced does not of itself require a reduction of either alimony or child support. 27A C. J. S. *Divorce* § 239 at 1137 (1959); 67A C. J. S. *Parent & Child* § 83b at 420 (1978); *see Brown v. Brown,* 278 S. C. 43, 292 S. E. (2d) 297 (1982).

Here, the decrease in Dr. Calvert's income has not been, in our opinion, either substantial or material, especially when his last reported income, which is for the year 1981, is considered in conjunction with his income for other years. *Cf. Rubenstein v. Rubenstein,* 295 Minn. 29, 202 N.W. (2d) 662 (1972) (where trial court in its original decree looked at husband's income over a six-year period in determining husband's alimony and child support payments).

In 1981, Dr. Calvert's income from Pathology Associates of Lexington, P.A., the professional association which employs him and in which he owns a fifty-percent interest, was $135,000. The year before, however, his income was $198,000. In 1976, when the settlement agreement was executed, he earned $177,000, from Pathology Associates. Between 1976 and 1978, his average income was $172,440; and between 1979 and 1981, it was $165,550, only $6,890 less.

The differences between his income in 1976 and 1981 and between the average income for the two three-year periods since the execution of the settlement agreement and the entry of the divorce decree provide no grounds on which to modify Dr. Calvert's alimony and child support payments. A

modification is not warranted absent a strong showing by Dr. Calvert that he is no longer in a condition to support his wife and unemancipated child as he agreed to do and as the family court prescribed when it incorporated the settlement agreement and made it a part of the divorce decree. Dr. Calvert did not make such a showing, at least not to our satisfaction.

Even though Dr. Calvert's alimony and child support payments are substantial, they are not out of proportion to the comparatively large income he still earns each year. Moreover, they are in keeping with the circumstances and living standards enjoyed by the parties at the time of the divorce. *Botkin v. Botkin*, 247 Minn. 25, 77 N. W. (2d) 172 (1956).

We also disagree with the family court's finding that increases in Dr. Calvert's alimony and child support payments resulting from the operation of the cost of living index provision of the settlement agreement constituted a changed circumstance warranting a reduction in their amounts.

Generally, changes in circumstances within the contemplation of the parties at the time the decree was entered do not provide a basis for modifying either an alimony allowance or a child support award. 27A C. J. S. *Divorce* § 239 at 1130 (1959); 67A C. J. S. *Parent & Child* § 83a at 418 (1978); *see Nelson v. Merritt*, 281 S. C. 126, 314 S. E. (2d) 840 (Ct. App. 1984).

Here, the parties, as we mentioned, expressly contracted to use the cost of living index as a means of determining periodic automatic increases or decreases in Dr. Calvert's alimony and child support obligations. Clearly, the parties contemplated that the amounts to be paid by Dr. Calvert as alimony and as child support would not remain the same but would go either up or down. Because an increase in the cost of living was within the contemplation of the parties and the court at the time the settlement agreement and the divorce decree were formulated, it cannot be used as a basis for modifying the alimony and child support provisions of the decree.

Furthermore, an inflationary increase in the cost of living does not amount, at least, by itself, to a change in circumstances. Inflation affects everyone, father,

mother, and child. *Baker v. Baker*, 286 S. C. 200, 332 S. E. (2d) 550 (Ct. App. 1985); *Nelson v. Merritt*, 281 S. C. at 129-30, 314 S. E. (2d) at 842.

Reversed.

SANDERS, C. J., and CURETON, J., concur.