1996

Casimir Michal KIELAR, Appellant/Respondent v.
Loretta Z. KIELAR, Respondent/Appellant.

(429 S.E. (2d) 851)

Court of Appeals

*Allen C. Pate* , Florence, *for appellant/respondent.*

*Evander G. Jeffords* and *Mary Layton Wells*, Florence, *for respondent/appellant.*

Submitted Jan. 18, 1993.

Decided April 19, 1993.

BELL, Judge:

Casimir Michal Kielar commenced this action against his former wife, Loretta Z. Kielar, seeking a modification of their divorce decree.[1] The parties were divorced in 1989 based on one year of continuous separation. The divorce decree gave Dr. Kielar custody of their three children, required him to provide for their support, and awarded Ms. Kielar $2000 a month in alimony. On appeal by Dr. Kielar, this Court affirmed the award of alimony. *See Kielar v. Kielar*, Op. No. 90-MO-101 (Ct. App. filed June 11, 1990). During the pendency of that appeal, Dr. Kielar brought this suit seeking a reduction in Ms. Kielar's alimony, an order that she pay him child support, and other relief. He alleged these modifications of the original decree were warranted by a material change in the circumstances of the parties. The family court modified the decree to require Ms. Kielar to pay child support, but otherwise denied the relief sought. Both parties appealed. We reverse the order of child support and affirm on all other issues.

The family court made the following findings of fact, which are supported by the evidence:

> 1. Dr. Kielar is an anesthesiologist. At the time of the divorce, he earned in excess of $300,000 a year. At the time of the divorce, Ms. Kielar worked part-time, earning about $120 a week.
> 2. After the divorce, Dr. Kielar remarried. His second wife works full time. Ms. Kielar has not remarried.

---

[1] The family court's original 1988 order deciding alimony, child custody, and property division granted the parties a legal separation. Later in 1988, the court granted the parties a divorce. For convenience, we refer to these two decrees as the "divorce decree."

3. Dr. Kielar continues to live in the parties' former marital residence. He is a member of the Country Club of South Carolina. He owns a beach condominium. He also owns property in Virginia. He owns a Corvette automobile and a Corsica automobile. In the year after the divorce, he added $30,000 to one of his two retirement accounts. At no time since the divorce has he found it necessary to reduce any funds in either of his retirement accounts. In addition to his regular bank accounts, he has a special checking account in which he keeps an undisclosed amount of money. Between the divorce and the hearing in this case, he took two expensive trips to his homeland, Poland.

4. Ms. Kielar now lives in a rented apartment. She has purchased an automobile with proceeds from her share of the equitable distribution of the marital estate. She has also used money from the equitable distribution to pay for vacations and other expenses.

5. After the divorce, Dr. Kielar lost his position at Bruce Hospital in Florence. His written contract with Bruce Hospital Systems restricted him from working at other hospitals. On four different occasions, Dr. Kielar failed to report to Bruce Hospital while on call. On three of those occasions, he did not report because of conflicting engagements at other area hospitals. Following the earlier infractions, Bruce Hospital warned him that continued infractions would result in cancellation of his contract. Following the fourth incident, Bruce Hospital gave him the option of resigning or being fired. He resigned and obtained employment at St. Eugene Hospital in Dillon, where he worked at the time of the hearing. From January, 1990, through August, 1990, he earned over $121,000 at St. Eugene. He also earned an additional net monthly income of over $1000 for services performed at Bruce Hospital. His annual income from medical practice exceeds $180,000.

6. After the divorce, Ms. Kielar obtained full-time secretarial employment at a private school. At the time of the hearing, she earned $1,516.67 a month, or about $18,200 a year.

7. Dr. Kielar's present actual income as well as his present earning capacity is such that the decrease in his income after losing his job at Bruce Hospital has had little economic impact on his lifestyle or existing assets.

Dr. Kielar claims the reduction in his income after his "involuntary resignation" from Bruce Hospital taken with the increase in Ms. Kielar's earned income is a sufficient change of circumstances to warrant modifying the alimony and child support provisions of the divorce decree. There is no question he has experienced a substantial loss of income at St. Eugene Hospital. However, on the facts of this case, his reduced income is not a material change of circumstances warranting modification of the divorce decree. His income is still enough that he is able to pay alimony and support his children without reducing the standard of living he enjoyed during the marriage. In contrast, Ms. Kielar's standard of living, although quite comfortable, is less than it was during the marriage. If she were required to pay child support, it would be diminished even more. As the supported spouse of the former marriage, she is entitled, as nearly as is practical, to be in the position she enjoyed during the marriage. *Johnson v. Johnson*, 296 S.C. 289, 372 S.E. (2d) 107 (Ct. App. 1988), *cert. denied*, 298 S.C. 117, 378 S.E. (2d) 445 (1989). In the circumstances, it was an error of law amounting to an abuse of discretion for the family court to require Ms. Kielar to pay Dr. Kielar $635 a month (over one third of her gross salary) as child support. We reverse the court's decision to modify the terms of child support.

In so deciding, we recognize that in the wake of the divorce, Dr. Kielar has found it difficult to maintain his accustomed lifestyle, meet his alimony and child support obligations, and pay Ms. Kielar her share of the equitable distributions. Much of his argument on appeal concentrates on the substantial reduction in his net worth and the resulting cash flow problems he has experienced since the divorce. These problems are real. His reduced net worth, however, has re-

sulted primarily from the equitable distribution of the marital estate consequent on the divorce. This is not a changed circumstance unconnected with the divorce or uncontemplated by the divorce decree. The normal consequence of divorce is a straitened financial situation for one or both parties. Dr. Kielar cannot expect the courts to insulate him from this consequence at the expense of his former spouse. Often, though not invariably, divorce imposes more severe and more lasting economic adversity on the woman than on the man. In most cases, it is beyond the legal authority of the courts to alter this result. Within the scope of their authority, however, the courts must achieve, as nearly as practical, equity between the parties. In this case, it is neither consistent with the law nor consonant with equity to burden Ms. Kielar with a child support payment to Dr. Kielar, whose earned income and assets are several multiples of hers, when he has the ability to support the children fully from his own resources without reducing the standard of living he enjoyed during the marriage.

We have reviewed the remaining issues raised by both appeals and find them to be manifestly without merit. Accordingly, we affirm the judgment of the family court on those issues. *See* S.C. Code Ann. § 14-8-250 (Supp. 1992); Rule 220(b)(2), SCACR.

As a matter of clarification, we hold the court's order for each party to pay its own attorney fees refers to fees incurred in conjunction with the motion for reconsideration and does not modify the previous order for the husband to pay $1000 of the wife's attorney fees and costs included in the original divorce action.

Affirmed in part, reversed in part.

GARDNER and SHAW, JJ., concur.