477 S.E.2d 727

**Kenneth E. KELLEY, Respondent,**

v.

**Delores E. KELLEY, Appellant.**

**No. 2579.**

Court of Appeals of South Carolina.

Submitted Sept. 10, 1996.

Decided Oct. 21, 1996.

275 S.C. at 74, 267 S.E.2d at 528.

Dianne S. Riley, Greenville, for appellant.

James C. Moseley, Jr., Mauldin, for respondent.

HOWELL, Chief Judge:

Kenneth Kelley (Husband) filed suit to terminate or reduce his alimony payments to his ex-wife Delores Kelley (Wife). From an unfavorable Family Court order reducing her alimony, Wife appeals. We affirm.[1]

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

## Facts

Husband and Wife married in 1971 and had two children. The parties were divorced in January 1990 on the ground of one year continuous separation. At the time of the divorce, Husband had a bachelors degree and worked as an accountant at the Michelin Tire Corporation; Wife had graduated high school and had one year of college, and worked part-time outside the home. In its divorce decree the Family Court adopted a prior order of March 1989, giving custody of the children to Wife, and ordering Husband to pay $900.00 per month child support, $66.00 per month health insurance for the children and Wife, and $600.00 per month alimony.

Husband left his accounting job at Michelin in January 1991 and received 6 months severance pay. He then began a real estate venture with his brothers, refurbishing and selling homes. This business failed and he was only able to find a salaried position as a delivery manager of telephone directories for nine states in the southeast in 1994. Husband testified that his new job's salary was $19,500 per year, though his employer did provide for certain travel expenses (meal, auto, lodging). Wife, however, subsequently increased her income by turning her part-time job into full-time work at a local bank.

Husband's child support obligations ended in August 1993. In April 1994 Husband moved to modify the January 1990 divorce decree and its incorporated order. Although he no longer paid $900.00 per month in child support nor $66.00 per month for his children's health insurance, he argued that his decrease in monthly income and Wife's increased income were significant changes in circumstances to warrant modification of his alimony payments. The lower court made the following findings: [2]

|  | Husband | | Wife | |
|---|---|---|---|---|
|  | 1988 | 1994 | 1988 | 1994 |
| Gross Monthly Inc. | 4216.00 | 1625.00 | 406.26 | 1516.67 |
|  |  | 1199.00 (net) | | |

---

**2.** There appear to be some inconsistencies in the figures used in the final written order, but neither party has challenged the lower court's calculations. These numbers do not reflect the parties' respective alimony payments or receipts.

| | | | |
|---|---|---|---|
| Monthly Expenses | 2359.00 | 1781.00 | 2282.57 |
| Monthly Deficit | | 582.00 | 765.90 |

After hearing the evidence the Family Court agreed with Husband, and though it found that he was underemployed, the court reduced his alimony payments from $600.00 to $400.00 per month. Wife argues that Husband's voluntary underemployment, misconduct, and misrepresentations preclude the lower court's finding of a change in circumstances to warrant a reduction in alimony.

### Scope of Review

An appellate court reviewing a family court order may find facts in accordance with its own view of the preponderance of the evidence. *Robinson v. Tyson,* 319 S.C. 360, 461 S.E.2d 397 (Ct.App.1995); *O'Neill v. O'Neill,* 293 S.C. 112, 359 S.E.2d 68 (Ct.App.1987). The broad scope of review does not require the reviewing court to disregard the findings of the family court judge, who, having seen and heard the witnesses, is in a better position to examine their credibility. *Skinner v. King,* 272 S.C. 520, 252 S.E.2d 891 (1979); *Pirkle v. Pirkle,* 303 S.C. 266, 399 S.E.2d 797 (Ct.App.1990). Nor does this broad review relieve an appellant of his or her burden of convincing the appellate court that the family court committed error. *Skinner v. King,* 272 S.C. 520, 252 S.E.2d 891 (1979). Questions concerning alimony rest with the sound discretion of the trial court, whose conclusions will not be disturbed absent a showing of abuse of discretion. *Bannen v. Bannen,* 286 S.C. 24, 331 S.E.2d 379 (Ct.App.1985). An abuse of discretion occurs when the court is controlled by some error of law or where the order, based upon findings of fact, is without evidentiary support. *McKnight v. McKnight,* 283 S.C. 540, 324 S.E.2d 91 (Ct.App.1984).

### Discussion

The General Assembly has expressly authorized ex-spouses to seek modification of alimony based on a change of either spouse's circumstances or in the payor spouse's financial ability. S.C.Code Ann. § 20–3–170 (1976) (whenever "the circumstances of the parties or the financial ability of the

spouse making the periodic payments shall have changed ... either party may apply to the court"). The change must be unanticipated and either substantial or material. *Brown v. Brown*, 278 S.C. 43, 292 S.E.2d 297 (1982); *Calvert v. Calvert*, 287 S.C. 130, 336 S.E.2d 884 (Ct.App.1985). Many of the same considerations relevant to the initial setting of an alimony award have been applied in the modification context as well. *See, e.g., Kielar v. Kielar*, 311 S.C. 466, 429 S.E.2d 851 (Ct.App.1993) (parties' standard of living during the marriage); *Boney v. Boney*, 289 S.C. 596, 347 S.E.2d 890 (Ct.App. 1986) (earning capacity); *Calvert v. Calvert*, 287 S.C. 130, 336 S.E.2d 884 (Ct.App.1985) (payor spouse's continued ability to support the other spouse). The party seeking modification has the burden to show by a preponderance of the evidence that the unforeseen change has occurred. *Boney v. Boney*, 289 S.C. 596, 347 S.E.2d 890 (Ct.App.1986). The following circumstances, without more, have been found insufficient to warrant modification of alimony: unwarranted debts, inflation, increased or decreased income of the payor spouse, a payee spouse's anticipated employment, and the "straitened financial situation[s]" which are a normal consequence of divorce. *See Brown v. Brown*, 278 S.C. 43, 292 S.E.2d 297 (1982); *Kielar v. Kielar*, 311 S.C. 466, 429 S.E.2d 851 (Ct.App.1993); *Calvert v. Calvert*, 287 S.C. 130, 336 S.E.2d 884 (Ct.App.1985); *Baker v. Baker*, 286 S.C. 200, 332 S.E.2d 550 (Ct.App.1985).

Therefore, the issue here is whether the lower court abused its discretion in finding that Husband proved that the requisite change of circumstances occurred. Although there is some evidence to support Wife's argument, under this Court's scope of review, and particularly in light of the deference given the trial court's credibility determinations, *see Pirkle v. Pirkle*, 303 S.C. 266, 399 S.E.2d 797 (Ct.App.1990), we agree with the Family Court and conclude that Husband is entitled to a modification.

■ Husband asserts that Wife's increased monthly income from $406.26 to $1516.67 (excluding alimony) is proof of changed circumstances. Wife testified that she did not work outside the home until both children started school. At the time of the divorce she had part-time employment, which she later turned into a full-time job. There is no evidence in the record that the parties expected Wife to continue working only

at home. On the contrary, the record suggests that, at the time of the divorce, the parties anticipated that Wife would later return to work full-time outside the home. Accordingly, Husband cannot use Wife's increased earnings as a basis for changed circumstances. *See, e.g., Brown v. Brown,* 278 S.C. 43, 292 S.E.2d 297 (1982).

▪ Husband also argues that he met his burden because his own diminished salary and overall economic circumstances do not permit him to pay $600 per month in alimony. We agree. *Compare White v. White,* 290 S.C. 515, 351 S.E.2d 585 (Ct.App.1986) (payor-husband adequately demonstrated that his deteriorated financial condition adversely affected his ability to make alimony payments) with *Calvert v. Calvert,* 287 S.C. 130, 336 S.E.2d 884 (Ct.App.1985) (while payor-spouse had proven that his income decreased, he failed to show, *inter alia,* that he was no longer in a position to pay alimony).

Husband's ability to pay alimony is significantly reduced. His monthly gross income has dropped by $2591.00, from $4216.00 to $1625.00. While he no longer pays $900.00 in child support, his monthly expenses, excluding alimony, have fallen more slowly, only $1428.00, from $3259.00 [$900.00 of which was child support] to $1781.00. He testified that because his "assets are obliterated and on a salary of $19,500 a year," he could no "longer afford to continue paying $7,200 a year in alimony." He further testified that he has never missed paying his alimony or child support, but it was extremely difficult to continue to do so. The lower court found Husband's current monthly deficit to be $582.00. In short, Husband requested the termination of alimony so that he "could survive financially." The trial court agreed with Husband, finding that "he has had a dramatic decrease in income and his decrease exceeds his decrease in expenses."

Wife counters that notwithstanding this finding, Husband failed to meet his burden because he is voluntarily underemployed, causing his actual income to be far below his earning capacity. She points out that he has a bachelor's degree in business administration and has several years experience in finance and cash accounting. Therefore, she contends, it would be inequitable and contrary to the case law concerning earning capacity to permit a reduction.

Although the trial court did not fully explain its finding that Husband was voluntarily underemployed, it can be inferred from the record that the court found his testimony and explanation for his diminished salary to be in good faith and reasonable under the circumstances. While Husband's argument that his sexual orientation forced his resignation from Michelin and has hindered his subsequent job prospects is not supported by the record, *Cf. Clark v. Greenville County*, 313 S.C. 205, 437 S.E.2d 117 (1993) (counsel's argument not evidence to oppose summary judgment), there is evidence that he has made good-faith reasonable efforts to acquire gainful employment since then. Husband described that his four year real estate venture with his brothers, which first appeared to be lucrative, ultimately was not. He testified that he took his current job "because that's the only job that has been specifically offered to [him] after the accusations of recent years." Husband stated that he has tried to get another job to make more money and is still trying to do so.

■ Whether termed voluntary underemployment, imputation of income, or the failure to reach earning potential, the case law is clear that when a payor spouse seeks to reduce support obligations based on his diminished income, a court should consider earning capacity. *See, e.g., Boney v. Boney*, 289 S.C. 596, 347 S.E.2d 890 (Ct.App.1989); *Vestal v. Vestal*, 297 S.C. 215, 375 S.E.2d 355 (Ct.App.1988). Further, the supreme court has emphasized that voluntary changes in employment which impact a payor spouse's ability to pay alimony are to be closely scrutinized. *Camp v. Camp*, 269 S.C. 173, 236 S.E.2d 814 (1977).[3] However, contrary to Wife's position, just as increased or decreased income, without more, is insufficient to warrant a change in circumstances, *see, e.g., Brown v. Brown*, 278 S.C. 43, 292 S.E.2d 297 (1982); *Baker v. Baker*, 286 S.C. 200, 332 S.E.2d 550 (Ct.App.1985); *Calvert v. Calvert*, 287 S.C. 130, 336 S.E.2d 884 (Ct.App.1985), the failure to reach earning capacity, by itself, does not automatically

---

3. An even closer scrutiny is called for in cases where parents attempt to modify their child support obligations. In *Vestal v. Vestal*, 297 S.C. 215, 375 S.E.2d 355 (Ct.App.1988) and *White v. White*, 290 S.C. 515, 351 S.E.2d 585 (Ct.App.1986), the payor was permitted a reduction of alimony, but not a reduction in child support obligations.

equate to voluntary underemployment such that income must be imputed.

Although some of the precedents appear inconsistent, the common thread in cases where actual income versus earning capacity is at issue is that courts are to closely examine the payor's good-faith and reasonable explanation for the decreased income. *See generally Boney v. Boney,* 289 S.C. 596, 347 S.E.2d 890 (Ct.App.1986) (trial judge did not find payor-husband's testimony that his termination as a loan officer had adversely affected his ability to earn income was credible); *Robinson v. Tyson,* 319 S.C. 360, 461 S.E.2d 397 (Ct.App.1995) (income imputed to payor-father where *inter alia,* he made insincere efforts to provide trial court with evidence of his earning potential); *Vestal v. Vestal,* 297 S.C. 215, 375 S.E.2d 355 (Ct.App.1988) (payor-husband's decision to resign as an officer and enlist in the Air Force would benefit him financially in both the long run and the short run); *White v. White,* 290 S.C. 515, 351 S.E.2d 585 (Ct.App.1986) (payor-husband's various financial downturns entitled him to a reduction in alimony payments). Efforts to frustrate support obligations are not tolerated, nor are prolonged periods of unemployment generally countenanced. *See, e.g., Fisher v. Fisher,* 319 S.C. 500, 462 S.E.2d 303 (Ct.App.1995) (reduction in child support denied and income imputed where husband voluntarily left job because it was too far away, too dirty, and unrelated to his prior work, and he waited to hear from one potential employer for two months).

However, courts are reluctant to invade a party's freedom to pursue the employment path of their own choosing or impose unreasonable demands upon parties. *See generally Walker v. Frericks,* 292 S.C. 87, 354 S.E.2d 915 (Ct.App.1987) (reduction but not termination of husband's alimony payments affirmed because order did not require retirement-age husband to resume employment but instead continue part-time work he was already doing). Nonetheless, even otherwise unreviewable career choices are at times outweighed by countervailing considerations, particularly child support obligations. *See generally Robinson v. Tyson,* 319 S.C. 360, 461 S.E.2d 397 (Ct.App.1995) ($30,000 income imputed to attorney-father who earned $700 per month doing providing legal services for those in poverty, while inexperienced lawyers in

the area made $24,000–$40,000 per year); *Chastain v. Chastain,* 289 S.C. 281, 346 S.E.2d 33 (Ct.App.1986) (father's earning potential properly considered where he had both a bachelors and masters degree and earned as much as $24,500 annually, but voluntarily removed himself from the job market to attend law school).

Thus, the lower court considered Husband's earning capacity, and its finding of voluntary underemployment is reflected in the court's decision not to further reduce the amount of alimony payments. Moreover, the court's first-hand opportunity to observe Husband, his current financial situation, and Husband's reasons for the adverse changes, are embodied in the court's decision to reduce his alimony by one-third. In short, the Family Court's balancing of the relevant considerations in arriving at its final decision was not erroneous and, is consistent with the precedents outline above.

Wife also contends that Husband's misrepresentations and omissions, to both the IRS in 1990–92 and to the lower court, should preclude a reduction in alimony. To the extent that Wife is using this evidence to attack Husband's credibility, we defer to the credibility determinations implicit in the court's ruling below. *See Pirkle v. Pirkle,* 303 S.C. 266, 399 S.E.2d 797 (Ct.App.1990); *Bramlett v. Davis,* 289 S.C. 85, 344 S.E.2d 867 (Ct.App.1986). To the extent that Wife is using this evidence to rebut Husband's argument on his changed financial condition, it is not relevant to Husband's financial condition in 1994.

Finally, Wife raises Husband's misconduct as a basis for denying the modification. This argument is without merit, for she alleges no 'new' misconduct since the original alimony order was set. Husband's fault in bringing about the divorce is not relevant to the inquiry into Husband's current ability to meet his previously-ordered alimony obligations.

Therefore, because Husband demonstrated that his decreased income significantly impaired his ability to meet his prior support obligations, and that his sincere, reasonable efforts to achieve his earning potential failed, we agree that he met his burden to show a change of circumstances warranting a reduction in alimony.

Therefore, for the foregoing reasons, the judgment below is **AFFIRMED.**

STILWELL, J., concurs.

HEARN, J., dissents in a separate opinion.

HEARN, Judge (dissenting):

Respectfully, I dissent. In my view, the husband failed to carry his burden of proving a substantial change in circumstances.

Here, the primary change in circumstances since the parties' divorce was the husband's voluntary reduction in income. He earned $4,216 per month as an accountant at Michelin at the time of the divorce in 1989. In December 1990, the husband resigned from this position. At the time of the hearing on his request for a reduction, the husband was earning $1,625 per month delivering telephone books, a decrease of over $2,500 per month since the divorce. While the wife's income has increased since the divorce, the majority admits this increase cannot be used to justify a reduction in alimony since it was contemplated by the parties at the time of the divorce. *Brown v. Brown*, 278 S.C. 43, 45, 292 S.E.2d 297, 298 (1982). The trial judge found the husband was underemployed based upon his education and experience, but inexplicably decreased the husband's alimony obligation by one-third. I believe this constituted an error of law amounting to an abuse of discretion.

An alimony award may be modified upon a showing of changed circumstances. S.C.Code Ann. § 20–3–170 (1985); *Darden v. Witham*, 258 S.C. 380, 387, 188 S.E.2d 776, 778 (1972). The burden of showing by the preponderance of the evidence that a change has occurred, however, is upon the party seeking the modification. *Cartee v. Cartee*, 295 S.C. 103, 104, 366 S.E.2d 269, 269 (Ct.App.1988) (quoting *Boney v. Boney*, 289 S.C. 596, 597, 347 S.E.2d 890, 892 (Ct.App.1986)).

In *Boney*, the husband sought a reduction or termination of alimony due to his termination from his former employment. The trial judge, however, as affirmed by this court, found the husband's potential earning ability should be based upon his

capacity for prospective earnings rather than upon his actual earnings, and refused to grant a modification. *Id.* at 599, 347 S.E.2d at 892. Similarly, Mr. Kelley's voluntary underemployment should not be the basis for a reduction of alimony when his *capacity* for earning remains the same as it was in 1989. *See Fisher v. Fisher,* 319 S.C. 500, 507, 462 S.E.2d 303, 307 (Ct.App.1995) (imputing father's potential income for determination of child support obligation); *Robinson v. Tyson,* 319 S.C. 360, 363, 461 S.E.2d 397, 399 (Ct.App.1995) (holding father capable of higher earning potential for determination of child support obligation).

Moreover, with the emancipation of the parties' two children, the husband was relieved from his child support obligation of $966 per month. This change in circumstances substantially improved the husband's financial condition. Given this fact and the voluntary nature of his own reduction in income, I believe the trial judge erred in granting the husband a reduction in alimony.

I would reverse.