THIS OPINION HAS NO
 PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY
 PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.

 
 
 
 THE STATE OF SOUTH CAROLINA
 In The Court of Appeals
 William Eric
 Rolfe, Respondent,
 v.
 Abigail J. Rolfe, Appellant.
 
 
 

Appeal From Darlington County
 James A. Spruill, III, Family Court Judge
Unpublished Opinion No. 2008-UP-197
Submitted February 1, 2008  Filed March
 20, 2008    
REVERSED IN PART AND REMANDED IN PART

 
 
 
 Marian D. Nettles, Philip Bryan Atkinson, of Florence, for
 Appellant.
 Robbie Forrester Gardner, III, of Hartsville, for Respondent.
 
 
 

PER CURIAM:  In
 this domestic action, Abigail Rolfe (Wife) appeals the family courts
 order reducing alimony payments of William
 Eric Rolfe (Husband) and the failure to award attorneys fees and costs.  We reverse
 in part and remand in part.
FACTS
Husband and Wife were married for twenty-six
 years.  During the marriage, Husband worked as a mechanic with Sonoco Products
 Corporation (Sonoco), and on the side, he also had a heating and air
 conditioning business.  The family court found Husband was the primary source
 of income for the family, but Wife contributed indirectly to the marriage
 through her services as a house wife, mother, and bookkeeper for [Husbands]
 heating and air conditioning business.  After a no-fault divorce proceeding in
 1995, the family court ordered Husband to pay Wife $1,200 per month in
 permanent, periodic alimony based on Husbands income potential of $6,000 per
 month.  
After the divorce was finalized, Husband quit his job with Sonoco and became self-employed in the heating
 and air conditioning repair business.  Additionally, Husband remarried on June 29, 1998.  In
 November 1999, Husbands second wife was diagnosed with breast cancer, and she
 underwent treatment for approximately three years.  In May 2005, Husbands second
 wife suffered a relapse.  Husband petitioned the family court for a reduction
 in the payment of permanent, periodic alimony based on a substantial change in
 circumstances.[1] 
 The family court reduced Husbands alimony payments from $1,200 to $900 per
 month based on his decreased income, Wifes unemployment, and the medical
 condition of Husbands second wife.  Wife appeals. 
STANDARD OF REVIEW
On
 appeal from a family court order, this Court has authority to correct errors of
 law and find facts in accordance with our own view of the preponderance of the
 evidence.  E.D.M. v. T.A.M., 307 S.C. 471, 473, 415 S.E.2d 812, 814
 (1992).  However, [q]uestions concerning alimony rest with the sound
 discretion of the [family] court, whose conclusions will not be disturbed
 absent a showing of abuse of discretion.  Kelley v. Kelley, 324 S.C.
 481, 485, 477 S.E.2d 727, 729 (Ct. App. 1996).  An abuse of discretion occurs
 when the family courts factual findings are without
 evidentiary support or are based upon an error of law.  Id.
LAW/ANALYSIS
I.  Modification of
 Alimony 
Wife
 contends the family court abused its discretion in reducing Husbands alimony
 payment based on (1) Husbands underemployment; (2) Wifes unemployment; and (3)
 the medical situation of Husbands second wife. 
1. Underemployment
 of Husband
Wife
 first argues the family court erred in failing to impute income to Husband due
 to his voluntary underemployment.  We agree.  
The
 party seeking the change in alimony has the burden to prove an unforeseen change
 in circumstances warranting a modification.  Id. at 486, 477 S.E.2d at
 729.  Several considerations relevant to the initial determination of alimony
 may be applied in the modification context as well, including the parties
 standard of living during the marriage, each partys earning capacity, and the
 supporting spouses ability to continue to support the other spouse.  Penny
 v. Green, 357 S.C. 583, 589, 594 S.E.2d 171, 174 (Ct. App. 2004).
The
 South Carolina Supreme Court has emphasized it will closely scrutinize the
 facts of any case wherein a husband . . . voluntarily changes employment so as
 to lessen his earning capacity . . . . Camp v. Camp, 269 S.C. 173, 174,
 236 S.E.2d 814, 815 (1977); see also Kelley, 324 S.C. at 488, 477
 S.E.2d at 731 ([V]oluntary changes in employment which impact a payor spouses
 ability to pay alimony are to be closely scrutinized.).  In Camp the
 South Carolina Supreme Court, stated Where the husband has voluntarily
 relinquished a well-paying practice and has taken a position at a modest
 salary, the court may base the amount of alimony upon his capacity to earn
 money, or upon his prospective earnings.  Camp, 269 S.C. at 175, 236
 S.E.2d at 815 (internal quotations and citations omitted).  
Recently,
 the South Carolina Supreme Court held the motive behind voluntary
 underemployment may be a factor when courts consider earning capacity.  Arnal
 v. Arnal, 371 S.C. 10, 13, 636 S.E.2d 864, 866 (2006) (The motive behind any purported
 reduction in income or earning capacity should be considered, but prior South
 Carolina appellate decisions do not preclude a finding of voluntary underemployment
 in instances where a spouse reduces his earning capacity without doing so in
 bad faith.). 
 However, in Arnal, our Supreme Court limited its holding by stating,
 [A] parent seeking to impute income to the other parent need not establish a
 bad faith motivation to lower a support obligation in order to prove voluntary
 underemployment.  Arnal, 371 S.C. at 13, 636 S.E.2d at 866.  Although
 the facts in Arnal involved reduction of child support payments, because
 voluntary underemployment occurs in the alimony arena as well, we find the situation
 analogous to alimony.  See S.C. Code Ann. §§ 20-3-130 (C)(4) and (C)(6) (Supp. 2007) (requiring
 the family court to consider the employment history and earning potential of each spouse and the current and reasonable anticipated earnings of
 both spouses when awarding alimony) (emphasis added);  Messer v. Messer, 359 S.C. 614, 629,
 598 S.E.2d 310, 318 (Ct. App. 2004) (holding a spouse obligated to pay alimony
 may not voluntarily or intentionally change his employment or economic
 circumstances so as to curtail his income and thereby avoid paying alimony or
 child support); see also Luthi v. Luthi, 289 S.C.
 489, 494, 347 S.E.2d 102, 105 (Ct. App. 1986) (A party may not escape
 liability for alimony by intentionally refusing or failing to work.).
Here,
 Husbands substantial change in circumstances occurred because of his decision
 to terminate his employment with Sonoco at the age of fifty-one.  As a result
 of his early retirement, Husband received $763.90 per month from Sonoco instead
 of $1,292.33 per month, which he would have received had he retired at age
 sixty.  Additionally, when Husband quit his job with Sonoco and became self-employed,
 the family court found he had the ability to earn $6,000 per month.  Since Husbands
 divorce decree, he has advertised little, if at all, and the hours he works per
 week vary between ten to forty hours.  When asked if he could work the same
 hours he used to work, Husband responded, I probably could, but I just dont
 feel like it, to tell the truth.  Husband cannot escape his current alimony
 obligation based on a desire not to work or an intentional refusal to work less
 than full-time.  See  Id., 289 S.C. at 494, 347 S.E.2d at 105.  
 
In
 addition to his underemployment, Husband openly admitted to under-reporting his
 income on his tax returns and work log.  Specifically, Husband admitted, If
 somebody pays you in cash, you just kind of dont write it down sometimes. 
 Additionally, Husband stated his tax returns would not reflect those cash
 payments, and his tax returns are inconsistent with his financial declarations. 
 In his financial declarations, Husband estimated $2,763.90 as his total net
 monthly income and $1,400 as his total monthly expense; therefore, he is financially able to pay his previous alimony obligation,
 especially in light of his under-reporting.  Moreover, Husband admitted the
 home where he and his second wife currently reside is in his mothers name.  He
 testified he purchased the home with money he saved from working at Sonoco, and
 the reason the home is titled to husbands mother is so he would not lose it if
 he went through another divorce.  By Husbands estimate, the home is worth
 $80,000, and he does not make house payments on it.  
The
 family court reduced Husbands alimony because his early retirement was a goal
 of both parties throughout their marriage.  However, we find Husband is
 voluntarily underemployed due to his decision to voluntarily terminate his
 employment with Sonoco and his decision not to work at full capacity in the
 heating and air conditioning business.  See Messer, 359 S.C. at 629,
 598 at 318 (holding a spouse obligated to pay alimony may not voluntarily or
 intentionally change his employment or economic circumstances so as to curtail
 his income and thereby avoid paying alimony or child support); Kelley,
 324 S.C. at 486, 477 S.E.2d at 729-30 (The following
 circumstances, without more, have been found insufficient to warrant
 modification of alimony: unwarranted debts, inflation, increased or decreased
 income of the payor spouse, a payee spouses anticipated employment, and the straitened
 financial situation[s] which are a normal consequence of divorce.) (internal
 quotations and citations omitted).
2.  Wifes Unemployment
Wife
 next contends the family erred by taking her unemployment into account in its decision to reduce alimony.  We agree.  
 
Alimony is a substitute for support which is normally
 incidental to the martial relationship.  Johnson v. Johnson, 296 S.C.
 289, 300, 372 S.E.2d 107, 113 (Ct. App. 1988).  Generally, the purpose of
 alimony is to place the supported spouse, to the extent possible, in the
 position she enjoyed during the marriage.  Id.  In Brown v. Brown,
 the South Carolina Supreme Court refused to reduce alimony payments when a former
 wife accepted a full-time employment position after the divorce.  278 S.C. 43,
 44, 292 S.E.2d 297, 297 (1982).  The Brown court noted the former wifes
 employment was anticipated and, therefore, did not amount to a change in
 circumstances warranting modification in alimony.  Id.
In
 the present case, the family court found alimony was a perfect disincentive
 for Wifes employment.  Specifically, the family court stated Wife made no
 serious attempt to gain employment but worked several days a week volunteering. 
 However, we find Wife is entitled to the level of support she enjoyed prior to
 her divorce from Husband.  During the parties twenty-six year marriage, Wife
 did not work outside the home for a number of years even though she has two degrees
 from Coker College.[2]  During their marriage, Wife and Husband enjoyed a comfortable
 lifestyle, and they were able to acquire assets without incurring substantial
 debt.  
We
 find Wife is entitled to live in the manner she enjoyed prior to her divorce
 from Husband, and permanent, periodic alimony is designed to ensure Wife can maintain
 that lifestyle.  See Johnson, 296 S.C. at 300, 372 S.E.2d at 113 (Ordinarily, the purpose of alimony is to
 place the supported spouse, as nearly as is practical, in the position of
 support she enjoyed during the marriage.).  Since
 her divorce, Wife has accrued debt and borrowed $50,000 on the marital home she
 received in the divorce.  Moreover, as stated in her financial declaration in
 2005, Wifes net monthly income, prior to the family courts decrease in
 alimony, was $1,794.16 and her expenses totaled $2,530.07.  Consequently, even
 with the previous alimony payment of $1,200, Wife was in a strained financial
 situation.  Accordingly,
 we find the family court abused its discretion by considering Wifes
 unemployment in its decision to reduce alimony.  
3.  Medical Condition and Lack of Insurance for Second
 Spouse
Wife next asserts
 the family court erred in concluding the medical condition of Husbands second
 wife and her lack of medical insurance justify a reduction in alimony.  As
 explained above, Husbands
 second wife was diagnosed with breast cancer, and she underwent treatment for
 approximately three years.  In May 2005, Husbands second wife suffered a
 relapse.  Husbands second wife testified
 her current outstanding medical bills amount to approximately $15,000, and that
 she is making small payments.  Second wife stated that she has been able to
 obtain write offs or receive care adjustments for her medical expenses.  The
 family court found Husbands second wifes cancer constituted a substantial
 change in condition, noting, the cost of treatment will be very substantial
 and that the [Husband] will not be able to pay all of the costs associated with
 the treatment.  
There
 has been no showing in the record by Husband that he has or will incur any debt
 as a result of his current wifes medical condition.  Thus, the family court
 improperly considered the medical condition of Husbands second wife in
 altering alimony.  See Spivey ex rel. Spivey v. Carolina Crawler,
 367 S.C. 154, 160, 624 S.E.2d 435, 438 (Ct. App. 2005) (holding an
 appellate court examines justiciable controversies, which are real and substantial
 controversies, which are ripe and appropriate for judicial determination instead
 of merely contingent, hypothetical, or abstract disputes and issues that are
 not ripe are not appropriately before this Court).  We decline to express an
 opinion on whether it was proper for the family court to assign weight to second
 wifes medical condition in altering Husbands alimony payments when Husband
 has neither paid nor obligated himself to pay any of second wifes medical
 expenses.  See Sloan v. Greenville County, 356 S.C. 531, 552, 590
 S.E.2d 338, 349 (Ct. App. 2003) (The function of appellate courts is not to
 give opinions on merely abstract or theoretical matters, but only to decide
 actual controversies injuriously affecting the rights of some party to the
 litigation.).  
II.  Attorneys Fees and
 Costs
Finally,
 Wife argues the family court erred in failing to award her attorneys fees and
 costs.  We agree.  
The
 family court has discretion in deciding whether to award attorneys fees, and
 its decision will not be overturned absent an abuse of that discretion.  Patel
 v. Patel, 359 S.C. 515, 533, 599 S.E.2d 114, 123 (2004).    In deciding
 whether to award attorneys fees, the family court should consider: (1) each
 partys ability to pay his or her own fee; (2) the beneficial results obtained
 by the attorney; (3) the parties respective financial conditions; and (4) the
 effect of the fee on each partys standard of living.  Id. 
The
 family court required each party to pay their own attorneys fees and costs
 based on the above-mentioned factors.  Based on our reversal of the family
 courts modification of alimony, Wifes beneficial result has changed. 
 Furthermore, Wife was forced to defend an existing award of alimony because of Husbands
 action for modification, which required representation of an attorney. 
 Therefore, we find it proper to award Wife attorneys fees, and we remand this
 issue back to the family court for a determination of an appropriate amount
 based on the factors as set forth in Patel, 359 S.C. at 533, 599 S.E.2d at
 123.[3]  See Epperly v. Epperly, 312 S.C. 411, 416, 440 S.E.2d 884, 886-87
 (1994) (remanding case to family court for reconsideration of attorneys fees
 when wife succeeded in part on appeal); Sexton v. Sexton, 310 S.C. 501,
 504, 427 S.E.2d 665, 666 (1993) (reversing and remanding the issue of
 attorneys fees when substantive results achieved at trial level were reversed
 on appeal).  
CONCLUSION
Accordingly, we reverse
 the family courts decision to reduce Husbands alimony obligation due to a substantial and material change in his circumstances. 
 Additionally, we find it appropriate to award Wife attorneys fees and costs
 and remand this issue to the family court to determine costs and
 attorneys fees.  Therefore, the family courts order is 
REVERSED IN PART
 AND REMANDED IN PART.[4]
HUFF,
 KITTREDGE, and WILLIAMS, JJ., concur.

[1] In 1999, Husband petitioned the family court for a
 reduction in alimony, which the family court denied because husband failed to
 make out a clear showing that there has been a material change in the
 circumstances that would justify and require this court to reduce his payment of
 alimony to [Wife].  
[2] However, Wife did keep books for Husbands heating and air
 conditioning business.  
[3] Testimony from the record indicates Wife owes $3,250
 in attorneys fees based on twenty six hours of time billed at a $150 an hour. 
 Wifes attorney submitted an affidavit to the family court to support
 attorneys fees and costs with a statement concerning former Wifes attorneys
 age, background, and years of practice.  However, this affidavit is not part of
 the record on appeal.  Therefore, rather than determining attorneys fees and
 costs at this level, we find it more appropriate for the family court to make a
 determination of a proper award.  
[4] We decide this case without oral arguments pursuant
 to Rule 215, SCACR.