0743

Lynda M. CHASTAIN, Respondent v. L. Joel CHASTAIN, Appellant.

(346 S. E. (2d) 33)

Court of Appeals

*L. Joel Chastain, pro se.*

*William G. Walsh,* Greenville, *for respondent.*

June 30, 1986.

GOOLSBY, Judge:

In this action for separate maintenance, the husband L. Joel Chastain appeals from the order of the family court. He questions the amount of child support the family court ordered him to pay each month, the grant of exclusive use and possession of the marital home to the wife Lynda M. Chastain until either she marries or the parties' mentally retarded son dies, and the division of the marital property between the parties. We affirm the family court's award of child support and its grant of exclusive use and possession of the marital home and affirm as modified the equitable distribution of the marital property.

1. We find no error in the family court's award to the wife of $250 monthly for the support of the parties' two children, Brian and Laura.

At the time of the hearing, Brian was seven years old and Laura was seventeen.

Brian suffers from Down's syndrome and requires constant supervision and care.

Laura is enrolled at the University of South Carolina in Columbia where she receives financial assistance in the form of scholarships and a student loan. Laura has paid a portion of her college expenses from money she earned from two part-time jobs held during the spring and summer months. She is an exceptional student, took advanced courses in high school, and skipped the third grade.

The amount to be awarded as child support is within the sound discretion of the trial judge whose award thereof will not be disturbed on appeal absent a showing of an abuse of discretion. *Spires v. Higgins,* 271 S. C. 530, 248 S. E. (2d) 488 (1978). Factors which the court should consider in determining the amount of support include: (1) the needs of the child

or children; (2) the incomes, earning capacities, and assets of both parents; (3) the health, age, and general physical conditions of both parents; and (4) the necessities and living expenses of both parents. *Peebles v. Disher*, 279 S. C. 611, 310 S. E. (2d) 823 (Ct. App. 1983).

Here, the trial judge considered the relevant factors in determining the amount the husband should pay each month in child support, including the wife's $31,000 a year income and the $8,000 educational fund established by the parties, and we are unpersuaded that the trial judge committed any error in doing so. *See* S. C. Code of Laws § 20-7-420(17) (1976) (family court may make support orders that continue beyond a child's majority where warranted by exceptional circumstances or where there are physical disabilities that warrant it); *Dunnavant v. Dunnavant*, 278 S. C. 445, 298 S. E. (2d) 442 (1982) (child's educational needs constitute exceptional circumstance warranting continuation of support orders beyond child's majority); *Hughes v. Hughes*, 280 S. C. 388, 313 S. E. (2d) 32 (Ct. App. 1984) (in assessing a parent's responsibility to provide financial assistance to a child in college, court should consider grants and loans and the child's ability to earn income during the school year and during vacation).

With particular reference, however, to the husband's argument that the amount is excessive considering he now attends law school, we note that the husband, who, on the date of the hearing, was 44 years old and in apparent good health, holds a bachelor's as well as a master's degree and has heretofore earned as much as $24,500 a year. When the husband elected to attend law school full-time, he voluntarily removed himself from the job market. Under these circumstances, the trial judge properly considered the husband's earning potential rather than simply his current income and properly disallowed the husband's diminished income as an excuse either for relieving the husband from any child support obligations at all or for reducing the amount the husband should otherwise pay in child support. *See* S. C. Code of Laws § 20-7-420(16) (1976) (family court may require parent "able to earn" an income to pay reasonable sum for the support of a child); *Camp v. Camp*, 269 S. C. 173, 236 S. E. (2d) 814 (1977) (court will

closely scrutinize case wherein a father voluntarily lessens his earning capacity and his ability to pay child support).

2. We further find no error in the award to the wife of the exclusive use and possession of the marital home until either the wife remarries or the son dies.

The son, as we mentioned, suffers from Down's syndrome and has special needs. He has a life expectancy of between 20 and 40 years. The home is located in a secluded neighborhood. Brian, who occasionally wanders off, is known to, accepted by, and looked after by the neighbors.

The parties have a substantial equity in the house; however, the husband testified at trial, "I don't want the house. I don't want her to sell the house. I don't want them to have to move if they don't want to move."

An award of the possession of the marital home is an incident of support. *Whitfield v. Hanks*, 278 S. C. 165, 293 S. E. (2d) 314 (1982); *see* S. C. Code of Laws § 20-7-420(15) (1976) (the family court may require a parent to provide necessary shelter for his or her child). The exclusive use and possession of the marital home, however, should not be awarded one spouse where the evidence reflects that a substantial portion of the nonoccupying spouse's assets are invested in the home and the evidence fails to show that some special circumstances exist which would warrant the award. *Barone v. Barone*, _____ S. C. _____, 338 S. E. (2d) 149 (1985); *Smith v. Smith*, 280 S. C. 257, 312 S. E. (2d) 560 (Ct. App. 1984).

Here, special circumstances exist. The parties have a mentally retarded son. Moreover, caring neighbors surround the home, a situation which the husband did not show would exist elsewhere were the wife forced to relocate.

When these special circumstances, together with the total amount of support the trial judge otherwise awarded the wife and the husband's attitude regarding his wife's and son's occupancy of the home, are balanced against the life expectancy of the handicapped child and the husband's equity in the home, we cannot say the trial judge abused his discretion in awarding exclusive use and possession of the marital home to the wife. *See Shafer v. Shafer*, 283 S. C. 205, 320 S. E. (2d) 730 (Ct. App. 1984) (factors a court should consider in awarding a spouse the exclusive use and posses-

sion of the marital home include, among other things, whether the home is to be used to provide shelter for a minor child, the length of time the equity of the other spouse will be tied up, and the total amount of support otherwise awarded the occupying spouse).

3. We find no error in the $89,500 value placed by the trial judge on the marital home. The husband complains this value had no basis in the record.

Although no one specifically testified that the marital home's fair market value was $89,500, this value is well within the range of the testimony offered by both parties at trial.

The husband's expert witness testified that the marital home had a fair market value of $99,500 and the husband himself valued it at $100,000. The wife, on the other hand, thought it was worth $80,000 but in need of repairs, costing between $8,000 and $10,000. Obviously, the trial judge, as he properly could do, chose to believe that the truth regarding the marital home's fair market value lay somewhere between the figure given by the husband and that testified to by the wife.

4. We find error, however, in the trial judge's division of the marital home.

The trial judge found that the wife's contribution to the equity in the marital home, which was titled in the names of both parties, was at least three times that of the husband's and that she had earned a higher income in both absolute numbers and in her relative capacity to earn. The husband excepts to these findings and to the resulting award to him of 25 percent of the present net equity in the marital home, a sum the trial judge found to be $4,750, payable to the husband without interest upon the sale of the home.

There is no evidence in the record to support the trial judge's findings regarding the earning history of the parties.

In fact, the record reveals that the husband, although possessing an unstable employment history, did provide for his family. As we mentioned, one year he earned $24,500. During periods he was unemployed, he drew unemployment compensation and used these funds to support the marriage.

Also, upon leaving state employment, the husband received over $10,000 in state retirement funds. He contributed these funds to the marriage.

Moreover, during the times he was unemployed, the husband performed homemaker services. He cleaned, shopped, cooked, and cared for the children.

Although the wife, who was 42 years old when the family court heard this case, has worked throughout the marriage, the only evidence in the record concerning her earnings is that she presently makes $31,000 a year. We do not know what her earnings were in past years.

The criteria a court should consider in making an equitable distribution of property include the ages, backgrounds and earning abilities of the parties, the length of the marriage, the parties' standard of living during the marriage, what property each spouse brought into the marriage, the present income of the parties, the property acquired during the marriage and its source of acquisition, and the probability of continuing present employment at present earnings or better. *Shaluly v. Shaluly*, 284 S. C. 71, 325 S. E. (2d) 66 (1985). The division of the marital property generally rests within the sound discretion of the trial judge whose decision will not be disturbed absent an abuse of discretion. *Simmons v. Simmons*, 275 S. C. 41, 267 S. E. (2d) 427 (1980). This court, however, may determine the facts based on its own view of the preponderance of the evidence. *See McNeill v. McNeill*, 343 S. E. (2d) 626 (1986) (in a domestic case, the Supreme Court's scope of review extends to the finding of facts based on its own view of the preponderance of the evidence).

In our view, based on the record and the applicable *Shaluly* factors, the trial judge in this instance abused his discretion in awarding the middle-aged husband of this 19-year marriage only 25 percent of the equity in the marital home, payable at some undeterminable point in the future with no interest on the equity.

Accordingly, we modify the trial judge's order to award the husband $9,500. This sum represents a 50 percent interest in the equity found by the trial judge to exist in the marital home. The value of the husband's equitable portion therein will carry the legal rate of interest from the date of the decree. The wife, however, shall have the option at any

time of paying the husband for his equitable interest in the home, plus interest.

In this instance, we have given much emphasis to the length of the marriage, the age of the parties, and to the fact that the marital home, the parties' principal asset, was jointly titled.

5. The husband's final exception to the distribution of the parties' personal property is manifestly without merit. *See* S. C. Code of Laws § 14-8-250 (1976) (amended 1985). The parties agreed prior to trial to the distribution of the contents of the home. The husband's attorney at trial confirmed that such an agreement was reached and the trial judge found that the agreement was a fair and equitable distribution based upon the parties' economic circumstances and contributions to acquisition.

Affirmed as modified.

GARDNER and CURETON, JJ., concur.