1393

Ex parte Petition of Judith Gray Snell WHITE. In re Judith Gray SNELL, Appellant v. Wilson Maurice SNELL, Respondent.

(385 S. E. (2d) 211)

Court of Appeals

*J. D. Todd, Jr.* of *Leatherwood, Walker, Todd & Mann,* Greenville, *for appellant.*

*John Kittredge* of *Wilkins, Nelson, Kittredge & Simmons,* Greenville, *for respondent.*

Heard June 13, 1989.

Decided Sept. 5, 1989.

GARDNER, Judge:

Judith Gray Snell White (the mother) brought this action against her former husband, Wilson Maurice Snell (the father), in which she sought, *inter alia,* an order (1) requiring the father to pay college expenses for their 19-year-old

daughter, Virginia Snell, in accordance with an agreement incorporated in the divorce decree of the parties, (2) requiring the father to pay child support for the children of the parties as provided by the agreement and (3) awarding her attorney fees. The appealed order basically denied the relief sought by the mother and granted the father's counterclaim for a reduction in his support obligation. We affirm in part, reverse in part and remand.

## ISSUES

We find the only issues of merit to be whether the trial court erred (1) in construing the agreement of the parties, as incorporated in the divorce decree, relating to the children's college expenses and post-majority child support payments, (2) in modifying the terms of the agreement and decree, and (3) in failing to award the wife attorney fees.

## FACTS

As stated in the first paragraph of this decision, the mother's complaint sought an order requiring the husband to pay college expenses for Virginia at Clemson in accordance with the parties' agreement which was approved and incorporated in the decree of the family court of July 8, 1976. The father's answer alleged, *inter alia,* that "the clear intent of the Order is that college education is at a four (4) year college or at an in-State public university."

The divorce decree of July 8, 1976, approved and incorporated as part of the decree an agreement of April 28, 1975, which provided:

> The husband agrees that he will pay $175.00 a month for the support of Gordon Snell and that such shall continue until Gordon reaches his twenty-first (21st) birthday or until such time as he shall have had an opportunity to complete four years of college. The Husband agrees to pay for the support and maintenance of Virginia Snell the sum of $175.00 a month, such to continue until Virginia reaches her twenty-first (21st) birthday or until such time as she shall have had an opportunity to complete four years of college. The Husband binds himself, his heirs, administrators, executors, and assigns, to make these child support payments.

The parties own certain stocks and have an investment in Sardis Mortgage Company of Charlotte, and it is agreed that the stocks owned by the parties and the investment in Sardis Mortgage Company shall be transferred to Robert L. Lindsey, an attorney-at-law in Charlotte, North Carolina, as Trustee, for the college education of the children. The Trustee shall have full power and authority to use any of the income from such stocks or to invade the principal for the purposes of providing a college education for the two children. *The Husband agrees that he will pay for the college educatoin of the two children in whatever amount, if any, over and above that provided in the trust if necessary. It is agreed that by college education is meant a four-year college course at any State university in the State of South Carolina or any other equivalent school with equivalent costs. The obligation to provide for a college education includes tuition, room, board and college fees. The college to be attended shall be agreed upon by the Husband and the child involved, after consultation with and consideration of the views of the Wife.* [Emphasis ours.]

The mother was 45 years old at the time of the hearing and the father 52 years old. Both parties had lived in South Carolina for a long number of years prior to the divorce, but subsequent to the divorce both parties remarried and moved to North Carolina. The parties' two children are Virginia, age 19, and Gordon, age 20.

Gordon is mentally handicapped with an I.Q. of 79. He graduated from high school taking learning disability classes, and at the time of the hearing was employed at an hourly rate of $4.50. He earned $10,958.46 in 1987 and had saved $4,000.00 with the hope of living independently. He is currently living with his mother and does not attend college.

Virginia wanted to attend the University of North Carolina but received only a qualified admission. The qualification and resulting decision to attend Clemson rather than the University of North Carolina can best be explained by quoting a letter from the mother to the father dated July 31, 1987, as follows:

Dear Wilson:

Virginia Page will be attending Clemson this Fall. Attached are the bill, meal plan information, expenses we have incurred and a UNC comparison.

It is my understanding from the business office of UNC as Fri. 7-31-87 they *expect* the tuition to be 260 per semester despite the newspapers.

Please note expense for student Fee is one lump sum at UNC and itemized at Clemson. I was also told that books would be $200 to $250 not 162.50 by UNC business office. In any event we will not have that exact figure until she is actually there. Please make that check to her—she will pay by her personal check and send you a copy of the bill and a check for the difference. That check *can not* be made to the University in any case.

We will be leaving here August 14th AM and she will be home from Maine Aug. 12th. So we will need

   (1) check for books
   (2) check for meals—see attached correspondence
   (3) check for portion of enclosed University bill.

These 3 checks should be in her possession as the Business office will not accept partial payments, and the deadline for prepayment is Aug 4th which we will miss due to the late billing. Hopefully the billing will be earlier for Spring semester—but at least we will have the figures.

UNC accepted her as a special student for 3 semester however she would have had to live in Granville Towers (4,000) as that was all that was available plus gone to 3 sessions of summer school. As she would have only been allowed to take 8 hours for 3 semesters before being allowed to transfer in. Therefore it would have been *far* more expensive to go to UNC.

I have enclosed a copy of Clemson's bill that shows $80.00 payment for admissions deposit, $75 for housing deposit. I have also included expenses of applications—I would appreciate a check for all of the above.

Because Tuition at Clemson is less than Carolina—but we are hit with the University fee as out of state—I expect the full amount of Carolina tuition to be credited in her check to off set the difference—per your letter you are basing this check on UNC tuition.

Please take care of this right away as she will not be allowed to register without it.
Judy
CC: J. D. Todd
        Robert L. Lindsay

The above letter is of importance because of reference to it in the appealed order, which is later discussed.

Virginia attended Clemson her freshman year in 1987 and 1988; she did well with her schoolwork there.[1] It appears from the record that the mother and Virginia consulted with her father before having Virginia matriculate at Clemson and that he agreed to her going to Clemson.

Virginia's expenses for room, board, tuition and other school related fees in the fall semester were $3,560.00. The trustee paid $2,030.75 of this amount which included $250.00 for book allowance. Her expenses for the spring semester were $3,725.00. The trustee paid only $1,580.00 of this amount. There is no explanation in the record for the difference in the amount paid in the fall and spring semesters other than the fact that the trustee did not pay for books in the spring. The record reflects that the trustee based his checks upon costs at UNC which included a dorm fee of $610.00 per semester rather than the $4,000.00 in Granville Towers referred to by the mother in her letter to the father.

The mother paid all expenses of Virginia's freshman year not paid by the trustee; she assumed and does not complain of the obligation of paying such expenses as transportation, clothing, spending money and sorority expenses. Virginia resided in North Carolina when she entered college.

The appealed order made no finding as to the intent of the parties except that the trial judge found the testimony of the husband to be persuasive and interpreted the mother's letter of July 31, 1987, to indicate that the mother believed that the intent of the parties as to the agreement's provisions for college expenses was the same as the father's. Based upon this, the trial judge provided by the appealed order that the trustee properly paid only those costs which would have been charged by the University of North Caro-

---

[1] Virginia was successful in enrolling at UNC at Chapel Hill, N. C., for her sophomore year.

lina for an in-state student. The appealed order also ordered that all costs not paid by the trustee for any reason be paid equally by both the mother and the father. The appealed order then provided that the holdings of the trial judge were for Virginia's best interest; no foundation for this finding of best interest was made.

The appealed order reduced the father's child support obligation to $25.00 per month for the son and $100.00 per month for the daughter; the order based the reduction on (1) the son's earnings and (2) the daughter's earnings and (3) the fact that the father is required to pay substantial college costs.

The appealed order required that both parties pay their own attorney fees.

## DISCUSSION

### I.

As a general rule, judgments are to be construed like other written instruments. The determinative factor is the intent of the parties or the court, as gathered, not from an isolated part of the contract or judgment but from all its parts. Hence, in construing a contract or a judgment, it should be examined and considered in its entirety; if the language employed is plain and unambiguous, there is no room for construction or interpretation and the effect thereof must be declared in the light of the literal meaning of the language used. *Stanaland v. Jamison,* 275 S. C. 50, 268 S. E. (2d) 578 (1980); 46 Am. Jur. (2d) *Judgments* Section 73 (1969); 49 C. J. S. *Judgments* Section 436 (1947).

Viewing the divorce decree of the parties and the incorporated and court-approved agreement in its entirety, we hold that the language of the decree and agreement is plain and unambiguous. Accordingly, there is no room for construction or interpretation and the effect of these plain words must be declared in the light of the literal meaning of the language used. The appealed order did not do so and is therefore erroneous.

Even if this were not the case, we hold that the preponderance of the evidence supports the wife's contention that the parties intended that the trustee and father pay the named expenses for Virginia's attendance at any state uni-

versity in South Carolina. If it had been the intent of the parties to limit college expenses as the father contends, this could have been easily accomplished by stating that college expenses meant those of a state college or university in the state where the child was a resident when he or she matriculated. This was not done and to hold that it was done simply defies the facts of record and the simple language used in the contract before us. And we so hold.

## II.

### A. College Expenses

Where there is an agreement regarding the support of an adult child, the family court should not decide support issues as if there were no agreement. Parents can contractually obligate themselves beyond the support required by law. *Ratchford v. Ratchford,* 295 S. C. 297, 368 S. E. (2d) 214 (Ct. App. 1988); *Stanaland v. Jamison, supra.*

In *Stanaland* our Supreme Court quoted with approval the case of *Shaffner v. Shaffner,* 36 N. C. App. 586, 244 S. E. (2d) 444 (1978). In *Shaffner* the Supreme Court of North Carolina held that to the extent that a separation agreement makes provision for the maintenance and support of a child past his majority, it is beyond the inherent power of the court to modify the agreement and that parents can by contract assume an obligation to their child greater than the law otherwise imposes and that parents may, by contract, bind themselves to support a child after emancipation and past majority.

Under *Stanaland,* a parent can contractually obligate himself to support or pay the educational expenses of a child past majority. We hold such an agreement is not modifiable by the court without the consent of the parties.[2] See, *Stanaland, supra; Cason v. Cason,* 271 S. C. 393, 247 S. E. (2d) 673 (1978); *Schadel v. Schadel,* 268 S. C. 50, 232 S. E. (2d) 17 (1977); *Shaffner, supra.* The court may order

---

[2] Note, however, that in exceptional circumstances the court has authority to order a parent to provide support beyond a child's majority. Section 20-7-420(17), Code of Laws of South Carolina (1976, as amended); *Chastain v. Chastain,* 289 S. C. 281, 346 S. E. (2d) 33 (Ct. App. 1986). We need not here decide whether in some such cases the best interests of the particular child might justify judicial reduction of the agreed level of support.

specific performance of such an agreement in the absence of a showing that the party sought to be charged is unable to perform. *Ratchford, supra.*

As noted, the agreement or the contract of the parties involved here was dated April 28, 1975, and the divorce decree which approved and incorporated the agreement was dated July 8, 1976. This was long before our Supreme Court, in the case of *Risinger v. Risinger,* 273 S. C. 36, 253 S. E. (2d) 652 (1979), announced the rule that in certain exceptional circumstances a court may order a parent to provide support to enable a child past majority to attend school. Nothing in the record indicates the father believed at the time of contracting that he was legally obligated to provide such support or that his agreement to do so was other than voluntary.

Accordingly, we reverse (1) the appealed order's holding that the mother has the obligation of paying one-half of the tuition, room, board and college fees for Virginia which are not paid by the trustee, (2) that the mother must use all efforts to obtain grants, etc., to be used on behalf of the daughter and (3) that the father's and trustee's obligation to pay the main college expenses are limited in amount to the expenses of a North Carolina resident at a North Carolina state university. And we so hold.

## B. Child Support

The trial judge by the appealed order reduced the child support for Virginia on the grounds that she worked during the summer months and the Christmas vacation and because the father was required to pay substantial college costs. This was error for the reasons stated hereinabove. Moreover, the father anticipated the college costs in 1975 when he signed the agreement and when the divorce decree incorporated and approved the agreement. The record before us does not reflect sufficient changes of condition to justify a reduction of the support payments for Virginia, even were that the appropriate test. Certainly the record does not demonstrate that the father is unable to continue paying the agreed level of support. The reduction of Virginia's support payments provided by the appealed order is therefore reversed.

The appealed order reduced the support payments for Gordon to $25.00 per month based upon the fact that Gordon now has substantial earnings. Again, based upon the parties' agreement, this was error. And we so hold.

### III.

The appealed order denied attorney fees to the mother. We summarily hold that this was error in view of our reversal with respect to the payment of the college expenses and support payments for the children. The record reflects that the wife is entitled to attorney fees. And we so hold.

### CONCLUSION

By way of conclusion, we find that the parties' agreement as incorporated into the decree of divorce clearly requires the father and the trustee to be wholly responsible for tuition, room, board and college fees up to the amounts charged by any South Carolina state university. The father is therefore responsible for these costs at Clemson University insofar as they are not paid by the trustee, regardless of whether Clemson charges the daughter resident or nonresident fees. Further, absent a showing that exceptional circumstances exist which would justify court-ordered support for Virginia or Gordon, as contemplated by Section 20-7-420(17), the father is bound by the terms of the parties' agreement as to child support. To the extent the appealed order is inconsistent herewith, it is reversed.

For the reasons given, we also reverse the appealed order insofar as it denies the mother attorney fees. In all other respects, the appealed order is affirmed.

The appealed order is therefore affirmed in part, reversed in part and remanded for purposes of setting attorney fees in accordance with this decision.

Affirmed in part, reversed in part and remanded.

GOOLSBY, J., concurs.

CURETON, J., concurs and dissents in separate opinion.

CURETON, Judge (concurring in part and dissenting in part):

I agree with the majority's conclusion that the provision in the divorce decree regarding the father's obligation to pay certain college costs for the daughter to attend "any state University in the state of South Carolina" is unambiguous. Therefore, no interpretation is permitted by the family court. I disagree with the majority that such a determination ends the matter.

The family court held both parties should bear the burden of the daughter's college expenses and any charges not paid by the trustee should be paid by the parties on an equal basis. I agree with the majority opinion that it was error for the family court to require the mother to pay one-half of the tuition, room, board, and college fees not paid by the trustee. However, I would hold that the basis for the error is the failure of the father to demonstrate changed circumstances and not solely upon an interpretation of the language of the agreement.

In *Kirsch v. Kirsch*, 383 S. E. (2d) 254 (S. C. Ct. App. 1989), this court held that an order for the payment of college expenses was a form of child support and the obligation was not automatically stayed by an appeal of the order to the Supreme Court under Supreme Court Rule 41(B).

The appellate courts of this state have held many times that family courts may modify child support provisions in a separation agreement which have been incorporated into a divorce decree if in the best interest of a child to do so regardless of the agreement's provisions. *Moseley v. Mosier*, 279 S. C. 348, 306 S. E. (2d) 624 (1983); *Miller v. Miller*, 280 S. C. 314, 313 S. E. (2d) 288 (1984); *Small v. Small*, 286 S. C. 87, 332 S. E. (2d) 769 (1985); *Ratchford v. Ratchford*, 295 S. C. 297, 368 S. E. (2d) 214 (Ct. App. 1988). The husband asserted in his answer that the family court should interpret the agreement to require him to pay college tuition based on the in-state rate for a North Carolina resident. Additionally, he counterclaimed for a reduction in his support obligations to his children, including the college education expenses, because there had been a change of conditions. The trial court implicitly found changed circumstances and ordered a modification of the husband's obligations. The question it seems to me now posed is whether the alleged change of conditions warrants the modifications ordered by the trial court.

While the father has remarried and has a minor child by his new wife, his annual income has doubled since the divorce.[1] His financial declaration indicates he has accumulated a pension fund of $20,000 along with stocks and bonds valued at $20,000. He also reports equity in real estate of $60,000 and personal property valued at $22,000. Further, the father's child support obligations over the past thirteen years have not increased and he admitted he had made no additional financial contributions to the children other than gifts.

The mother has provided for the children since the divorce except for the child support payments. She has also provided for her daughter's college expenses in excess of the tuition, room, board, and fees. The mother has substantially increased her income since 1975.[2] She has also remarried. However, her financial declaration does not indicate an accumulation of property similar to the father. She does not own any stocks or bonds, a pension fund, or real estate.

A family court may modify child support upon a proper showing of a change in the supported child's needs or the supporting parent's financial ability. *Smith v. Smith*, 275 S. C. 494, 272 S. E. (2d) 797 (1980); *Calvert v. Calvert*, 287 S. C. 130, 336 S. E. (2d) 884 (Ct. App. 1985). The father has not convinced me that his financial condition has worsened. Certainly the daughter's needs have not lessened.

The family court also reduced the father's support obligation to the son by $150 per month because the son is twenty years old, his mental condition has improved since the divorce, and he is employed on a full-time basis. The court reduced the support for the daughter by $75 per month because the father was required to pay substantial college costs. I agree the record supports a reduction in support for the son, but I do not agree as to the daughter.

The son has done well to overcome his handicap. Although the record indicates his employment opportunities may be limited, he has full-time employment at a salary of approximately $11,000 per year. He has obtained a car and saved

---

[1] The father testified that considering the impact of inflation, his 1988 salary was roughly equivalent to his 1975 salary.

[2] The mother's income was $6,000 per year in 1975. She had just changed jobs prior to the hearing in this case and was earning $1,700 per month.

approximately $4,000. The record indicates he has insurance coverage through his employment. Moreover, it seems apparent to me that the purpose of the provision for support past the children's eighteenth birthday was to provide support for them while in college. Because the son is not going to college the purpose of the provision has already been satisfied. These factors support the family court's decision to reduce the child support for the son. I would find no abuse of discretion. *Hicks v. Hicks*, 280 S. C. 378, 312 S. E. (2d) 598 (Ct. App. 1984) (a petition for modification of child support is addressed to the sound discretion of the trial court).

In my opinion, the record does not support a reduction in child support for the daughter. I have previously outlined the father's financial picture. As a full time college student, the daughter has worked during vacations and holidays. The father's obligation to assist with the college education for his daughter is an insufficient change of circumstances to justify a modification in child support. This obligation has been in place since 1975. His child support payment has not changed since then. In light of all the evidence I would reverse the reduction in child support for the daughter because the father h<sub>⌐</sub>s not demonstrated sufficient change of conditions.

I would further hold that the wife's other contentions on appeal are without merit and summarily reject them under Section 14-8-250, Code of Laws of South Carolina, 1976, as amended.