539 S.E.2d 712

**Janice H. ENGLE, Appellant,**

v.

**George S. ENGLE, III, Respondent.**

**No. 3265.**

Court of Appeals of South Carolina.

Heard Sept. 14, 2000.
Decided Dec. 11, 2000.

446

J. Falkner Wilkes, of Meglic, Wilkes & Godwin, of Greenville, for appellant.

Jason P. Boan, of Turnipseed, Ridge & Boan, of Spartanburg, for respondent.

HOWARD, Judge:

Janice H. Engle, the mother, brought this action against George S. Engle, III, the father, seeking increased child support and the dependent income tax deduction for the parties' child. The family court awarded an increase in child support based on the father's increased income and income imputed to the mother. The court declined to award the mother the state and federal dependent income tax exemption. The mother appeals. We affirm as modified.

## FACTS

The parties were married in 1981 and divorced in 1988. They have one child, born May 27, 1984. The mother was granted custody of the child and was awarded child support. The father was awarded visitation and the dependent tax exemption. In 1989, by agreement between the parties, the father's child support obligation was increased to $800 per month. It was later reduced by court order to $640 per month.

The mother instituted the present action against the father in May of 1997 seeking increased support in accordance with the Child Support Guidelines ("the Guidelines"), maintenance

of the child's health insurance by the father, pro rata division of the child's medical expenses, the dependent tax exemption, and attorney's fees.

By order dated December 22, 1998, the family court increased the father's child support obligation to $829.17 per month and allowed him to retain the dependent tax exemption. With the exception of changes not pertinent to this appeal, the mother's post trial motion for reconsideration was denied.

## LAW/ANALYSIS

### I. Child Support Calculation

#### A. Mother's Income

On appeal, the mother asserts the family court erred in imputing income to her for purposes of calculating child support. We disagree.

The mother has a master's degree in education. Prior to April of 1997, she was employed as a departmental coordinator in the chemistry department at Furman University earning approximately $28,000 per year. In April of 1997, the mother quit her job at Furman University and relocated with the child to Idaho to pursue graduate studies in biology. At the time of trial, she was earning $1,022 per month as a graduate student at Boise State University. For purposes of calculating child support, the family court imputed $28,000 per year in income to the mother, reasoning she would have been earning at least that amount if she had not voluntarily terminated her employment at Furman University.

In an action on appeal from the family court, the appellate court may find facts in accordance with its own view of the preponderance of the evidence. *Epperly v. Epperly,* 312 S.C. 411, 414, 440 S.E.2d 884, 885 (1994). However, this does not mean that the court should disregard the findings of the family court judge, who saw and heard the witnesses. *Hooper v. Rockwell,* 334 S.C. 281, 297, 513 S.E.2d 358, 367 (1999). Child support awards are addressed to the sound discretion of the trial judge and, absent an abuse of discretion, will not be disturbed on appeal. *Mitchell v. Mitchell,* 283 S.C. 87, 92, 320 S.E.2d 706, 710 (1984). An abuse of discretion occurs when the court is controlled by some error of law or

where the order, based upon the findings of fact, is without evidentiary support. *Kelley v. Kelley*, 324 S.C. 481, 485, 477 S.E.2d 727, 729 (Ct.App.1996).

We find no error in the family court's decision to impute income to the mother for purposes of determining child support. Under the Guidelines, "income" is defined as "the actual gross income of the parent, if employed to full capacity, or potential income if unemployed or underemployed." 27 S.C.Code Ann.Regs. 114–4720(A) (Supp.1999). The Guidelines further provide:

> Potential Income. If the court finds that a parent is voluntarily unemployed or underemployed, it should calculate child support based on a determination of potential income which would otherwise ordinarily be available to the parent.
>
> . . . .
>
> (b) In order to impute income to a parent who is unemployed or underemployed, the court should determine the employment potential and probable earning level of the parent based on that parent's recent work history, occupational qualifications, and prevailing job opportunities and earning levels in the community.

27 S.C.Code Ann.Regs. 114–4720(A)(5) (Supp.1999).

Where a parent voluntarily lessens his or her earning capacity, this Court will closely scrutinize the facts to determine the parent's earning potential, rather than the parent's actual income. *See Camp v. Camp*, 269 S.C. 173, 174, 236 S.E.2d 814, 815 (1977); *Robinson v. Tyson*, 319 S.C. 360, 363, 461 S.E.2d 397, 399 (Ct.App.1995); *see also Chastain v. Chastain*, 289 S.C. 281, 283, 346 S.E.2d 33, 35 (Ct.App.1986) (finding that father with master's degree voluntarily removed himself from the job market to attend law school and his earning potential was properly considered in calculating child support).

While the mother's decision to further her education is admirable in the present case, the record contains ample evidence to support the family court's determination that she voluntarily decreased her earning capacity in pursuit of this goal. Prior to her move to Idaho, the mother was employed at Furman University for seven years, attained advancement

within the University, and was highly thought of by her superiors. Based on this evidence, we affirm the family court's finding that the mother is voluntarily underemployed.

## B. Father's Income

The mother also asserts that the family court erred in its calculation of the father's income for purposes of determining child support. We agree.

According to the Guidelines, a party's gross income is usually determined based upon the required financial declarations provided by the party; however, "where the amounts reflected on the financial declaration may be in issue, the Court may rely on suitable documentation of current earnings, preferably for at least one month." 27 S.C.Code Ann.Regs. 114–4720(A)(6) (Supp.1999). Such documentation includes pay stubs and may be verified by tax returns filed by the payer. *Id.*

The father is employed as a stock broker. At trial, the mother presented tax returns and W–2 forms indicating that the father's adjusted gross income was $114,154 in 1996 and $132,218.50 in 1997. Pay stubs, also submitted into evidence, show that as of September 25, 1998, the father's year-to-date income from commissions alone totaled $110,324.94. The father's financial declaration, however, showed approximate earnings of $6,239 per month. The father testified that the financial declaration figure was based on four recent pay stubs.

The family court did not find that the father's financial declaration failed to fairly reflect his current income, stating that nothing was presented to indicate that the amount was inaccurate and that the court "accept[ed] the $6239.71 as ... his actual earnings." However, using evidence submitted by the mother, the court determined "the [father] has enjoyed an average income, including an annual fluctuating company bonus, of approximately $9,500 per month for the last three years" and then stated, "I think if we probably looked at the records today, he probably has been making the ninety-five hundred, maybe even more."

In arriving at an income amount for the father, the family court used neither the father's claimed figure from his finan-

cial declaration, nor the figure obtained from averaging the father's tax returns and pay stubs. Instead, the family court used the figure of $8,000 in calculating the father's child support obligation. In explaining the $8,000 figure, the court stated: "[I]t just so happen[ed] that I felt like $8,000 was a reasonable compromise as an obtainable figure. I had no idea what he would actually make...."

Although the family court stated that the mother had presented no evidence to contradict the father's claimed income on his financial declaration, we conclude the record establishes that the declarations were in fact inaccurate. The father claimed that his financial declaration reflected his earnings in the previous four months of June, July, August, and September 1998. The amount shown on the father's financial declaration as his gross income is $6,239.71. However, the father's pay stubs for those same four months record a total gross pay of $32,727.86, which averages $8,181.97 per month. The father's financial declaration clearly is not reflective of his actual earnings.

When the amount reflected on the party's financial declaration is in issue, the court may rely on other documentation. *Id.* While the Guidelines provide that the documentation should be for "at least one month," the phrase "at least" implies that one month is a minimum period. *See id.*

Due to his employment as a stock broker, the father's income varies from month to month and year to year. According to the father's testimony, the last time his child support obligation was calculated, his income figure was based on a five-year average because of his "fluctuating income." We believe that an average figure should have been used to calculate the father's income figure under the circumstances of this case.

The record includes the father's last two tax returns and a pay stub giving the year-to-date income for the ten months prior to the hearing. The father has earned approximately $10,491 per month for the thirty-four months prior to the hearing. Using the Child Support Guidelines and Worksheets in effect at the time of the hearing, we calculate the father's child support obligation to be $984.15 per month and award

452

this amount retroactive to December 22, 1998, the date of the original order.

## C. Deviation from the Guidelines

■ The family court also stated in its order that, even if support were to be calculated based upon a higher income figure for the father, the father's child support obligation should be set below the Guideline amount because of the mother's failure to maintain employment at her earning potential and the extra expense the father would incur in arranging visitation with the child.

■ Deviation from the Guidelines should be the exception rather than the rule. *Sexton v. Sexton,* 321 S.C. 487, 491, 469 S.E.2d 608, 611 (Ct.App.1996). "When the court orders a child support award that varies significantly from the amount resulting from the application of the [G]uidelines, the court shall make specific, written findings of those facts upon which it bases its conclusion supporting that award." 27 S.C.Code Ann.Regs. 114–4710(A)(1) (Supp.1999). A list of possible reasons for deviation from the Guidelines is provided by statute. *See* S.C.Code Ann. § 20–7–852 (Supp.1999). Neither of the court's explanations for a deviation from the Guidelines is included among the factors supporting deviation listed in the regulations. *See id.*

As to the mother's failure to maintain employment at her earning potential, the court has already imputed income to the mother due to her voluntary underemployment. Because income was imputed to her, the father's proportionate share of the total support amount has already been reduced from what it would be if the mother's lower, actual income figure had been used in the calculation. We fail to see why the mother's voluntary underemployment supports further lowering the father's support obligation in this instance.

■ As to the expense the father will incur in arranging visitation with the child now living in Idaho, the evidence does not support a deviation. Deviation is warranted when application of the Guidelines in a particular case would be unjust or inappropriate. *Id.* Here the evidence clearly reflects that the father has ample income and assets with which to pay for

visitation expenses.[1]  Therefore, we conclude that deviation is not warranted.

## II. Retroactive Increase

■ The mother next asserts the family court erred in failing to award the increase in child support retroactive to the date of filing.  We find no error.

The mother asserts that retroactive child support need not be specifically prayed for as long as a factual basis is established.  Although *Sutton v. Sutton*, 291 S.C. 401, 408, 353 S.E.2d 884, 888 (Ct.App.1987), upheld an award of retroactive child support when the mother had failed to specifically mention retroactive child support in her petition, we find no abuse of discretion in the family court's failure to award retroactive child support in the present case.

■ The decision to award retroactive child support rests in the sound discretion of the family court.  *Kelly v. Kelly*, 310 S.C. 299, 302, 423 S.E.2d 153, 155 (Ct.App.1992).  The entitlement to retroactive child support depends upon the facts and circumstances of each case.  *Sutton*, 291 S.C. at 408, 353 S.E.2d at 888.

The mother argues that failure to award the support retroactive to the date of filing encourages the payer to delay.  She asserts that the continuances in the present case significantly delayed the trial, unjustly enriching the father at the expense of the child.  However, in the present case, the family court found that the father did not intentionally delay the litigation and that the mother was responsible for some of the delays.  Therefore, we find no abuse of discretion.

## III. Dependent Tax Exemption

■ The mother next asserts the family court erred in failing to award her the dependent tax exemption for the child.  We disagree.

---

1.  The mother points out that the court failed to impute any income to the non income producing assets of the father.  The Guidelines provide that the court "should impute income to any non income producing assets of either parent ... other than a primary residence or personal property.  Examples of such assets are vacation homes ... and idle land."  27 S.C.Code Ann.Regs. 114–4720(A)(2)(b) (Supp.1999).  The father testified to ownership of a thirty-six acre farm, which recently appraised at $137,000, and to which no income was imputed.

454

The allocation of a dependent tax exemption is within the family court's discretion. *Hudson v. Hudson*, 340 S.C. 198, 205, 530 S.E.2d 400, 404 (Ct.App.2000).

In awarding the tax exemption to the father, the family court reasoned that the father earned the greater income and would therefore benefit most from the exemption. As to the mother's argument that the tax exemption would assist her in her efforts to finance the child's college education, the court noted the issue of whether, or how much, each party should contribute toward the child's college education was not an issue before the court.[2] We find no abuse of discretion in the family court's consideration of this issue.

For the foregoing reasons, the decision of the family court is

**AFFIRMED AS MODIFIED.**

STILWELL and SHULER, JJ., concur.

---

2. Moreover, the father has conceded during oral argument that he is willing to assist in paying for the child's college education.