THIS OPINION HAS NO
 PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY
 PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Carie W.
 Nobles, Respondent,
 v.
 Jon Christopher
 Nobles, Appellant.
 
 
 

Appeal From Horry County
 H. E. Bonnoitt, Jr., Family Court Judge
 Mary E. Buchan, Family Court Judge
Unpublished Opinion No. 2008-UP-427
Submitted June 2, 2008  Filed July 23,
 2008    
AFFIRMED 

 
 
 
 John S. Nichols, of Columbia, for Appellant.
 Frederick L. Harris, of Myrtle Beach; and George M. Hearn, Jr., of
 Conway, for Respondent.
 
 
 

PER CURIAM: Jon Christopher Nobles (Husband) appeals the family court order granting Carie
 Nobles (Wife) a divorce, arguing the family court erred in its determination of
 marital property, valuation of special equity interests, and equitable division
 of the marital estate.  We affirm.[1]
FACTS
I.  Background
Husband
 and Wife were high school sweethearts and became engaged while attending Clemson University.  Husband graduated from Clemson in December 1993, and obtained
 employment as a credit manager for Heilig-Myers Furniture in Columbia, South Carolina.  Husband and Wife married on May 20, 1995.  Shortly thereafter, Husband was
 transferred to Griffin, Georgia, as a Heilig-Myers store manager.  Wife graduated
 from Clemson in December 1995, and joined Husband in Griffin.  In July 1996,
 Husband was transferred to Jacksonville, Florida, where he eventually managed three
 Heilig-Myers stores and earned approximately $100,000 per year.  Wife also
 obtained employment in Jacksonville at the Florida Department of Health as a
 health educator earning $28,000 per year.
In early 2001, Husband lost his job with Heilig-Myers when the
 retail chain filed for bankruptcy.  Consequently, Husband and Wife returned to South Carolina to open a franchise furniture store in Myrtle Beach.  In March 2001, while
 making plans to leave Jacksonville, Wife became pregnant.  Approximately five months
 later, the parties moved to North Myrtle Beach and their first child, Sarah,
 was born in November 2001.  Following the birth of Sarah, Husband and Wife
 moved into a new home with financial contributions provided by Wifes parents.  
II.  Noble Enterprises
 of the Carolinas
With the proceeds from the sale of their home in Jacksonville and
 Husbands 401(k), the parties opened Norwalk: The Furniture Idea (Norwalk), a franchise, under the name Noble Enterprises of the Carolinas, LLC, the
 franchisee.  Based upon his management experience in the furniture business,
 Husband served as Norwalks managing partner.  Husband, his mother and father,
 and Wife each owned a twenty-five percent interest in the business.  While Wife
 occasionally assisted with the business, she was primarily responsible for
 caring for the couples first child.  
After Norwalk opened, Husband began staying away from home and became
 less dedicated to his role as managing partner.  Consequently, Wife hired
 Pamela Burris as sales manager for Norwalk.  Due to Husbands increasing
 unavailability, Burris became the de facto manager of the store.  By
 December 2005, Husband was working as a waiter and was no longer associated
 with Norwalk.  Shortly thereafter, Norwalk ceased operation.
III.  Termination of
 Marriage 
Husband began to withdraw from Wife in December 2003, arriving
 home from work no earlier than 8:00 p.m. and sometimes as late as 11:00 p.m.  While
 Wife expressed concern regarding Husbands absence, he claimed work demanded
 the majority of his time.  Husband showed little emotion and continued to
 withdraw from the marriage when Wife became pregnant with the couples second
 child in April 2004.  Husband began devoting his time to conducting private,
 secretive activities on his computer, and would shut down the computer when
 Wife entered the room.  Although Husband denied having an affair, Wife
 discovered Husband was visiting various pornographic websites and corresponding
 with at least three women twenty to thirty times a day in various internet chat
 rooms.  Wife also found suspicious text messages of an explicit nature on
 Husbands phone and later found out Husband had rented a private post office
 box.  Soon thereafter, Husband began refusing Wifes phone calls during the day
 and would not return home until Wife had gone to bed.  Husbands appearance also
 began to change dramatically.  Husband joined Golds Gym, hired a personal
 trainer, and spent a minimum of three hours every day at the gym even though
 his business was failing.  Husbands financial excesses included an ongoing
 health club membership, massages, manicures, hair appointments, car washes, and
 lawn care.
On March 21, 2005, Wife confronted Husband regarding their marital
 problems.  In response, Husband requested Wife file for divorce and the parties
 subsequently separated.  Wife hired a private investigator who obtained proof
 of Husbands relationship with Allison Sides, a fellow member of Golds Gym.  Wife
 and Wifes father also observed Husband on several occasions with Sides, including
 dinner dates and other social gatherings.  According to Husband, he engaged in
 sexual relations with Sides only after the parties separation.  
IV.  Post-Separation
 and Subsequent Proceedings
Since the separation, Wife and the couples children have continued
 to reside in the marital home.  Wife found employment and earns $2,092 gross
 per month.  Wife pays approximately $70 per month for the childrens medical
 and dental insurance and $953 per month for daycare.  Immediately after the separation,
 Husband resided with his parents and continued to work as a waiter.  However,
 Husband later moved to Jacksonville, Florida with his present girlfriend,
 Danelle Metz, where he still waits tables at a local restaurant.
Following Husbands relocation to Jacksonville, Wife brought an
 action against Husband seeking a divorce on the ground of adultery, an award of
 separate support and maintenance, use and possession of the marital home,
 custody of the parties two children, child support, alimony, attorneys fees,
 and restraining orders against disposing of assets and exposing the children to
 his romantic relationships.  In response, Husband counterclaimed for a mutual
 bar to alimony, equitable apportionment of the marital estate, a co-parenting
 arrangement, and an award of attorneys fees and court costs.  
On August 22, 2005, the family court issued a temporary order awarding
 Wife primary custody of the children and use of the marital home.  The
 temporary order also required Husband pay child support in the amount of $198
 per month based upon his imputed income of $4,000.  In addition, Husband was
 ordered to pay $2,000 per month for Wifes separate support and maintenance as
 well as $10,000 towards Wifes attorneys fees.
Approximately one year later, the family court issued a final
 order awarding Wife a divorce on the ground of adultery and granting her primary
 custody of the parties two children.  In determining child support, the family
 court imputed a monthly income of $4,000 to Husband finding he was voluntarily underemployed and capable
 of earning more given his skills, experience, and expertise.  Based upon
 Husbands imputed earnings of $4,000 per month, the family court ordered
 Husband to pay $1,114 in monthly child support.  With regards to equitable
 division, the family court valued the marital home at $230,000 and distributed
 sixty percent of the marital property to Wife.  In dividing the marital debt,
 the family court also noted Wife faced potential liability to the former family
 business based on an action brought against her by Noble Enterprises.  However,
 the family court ordered Husband to indemnify Wife against any judgment awarded
 in the pending lawsuit, finding any debt incurred by Noble Enterprises was a
 direct result of Husbands failure to dedicate himself to the business and the
 marriage . . . which he abandoned.  The family court further ordered Husband to
 pay Wifes attorneys fees in the amount of $12,800.  Subsequently, Husband filed a Rule 59(e), SCRCP,
 motion, which was denied.  This appeal followed. 
STANDARD OF REVIEW
In an
 appeal from the family court, the appellate court has the authority to find the
 facts in accordance with its own view of the preponderance of the evidence.  Ex
 parte Morris, 367 S.C. 56, 61, 624 S.E.2d 649, 652 (2006).  However,
 this broad scope of review does not require the appellate court to disregard
 the findings of the family court.  Wooten v. Wooten, 364 S.C. 532, 540,
 615 S.E.2d 98, 102 (2005).  Neither is the
 appellate court required to ignore the fact that the family court, who saw and
 heard the witnesses, was in a better position to evaluate their credibility and
 assign comparative weight to their testimony.  Id. at 540, 615
 S.E.2d at 102.  
LAW/ANALYSIS

I.  Husbands Income
Husband
 argues the family court erred in imputing $4,000 per month income to him. 
 Specifically, Husband asserts the family court erred in finding he was
 voluntarily underemployed and capable of earning $4,000 per month based upon
 his skill, experience, and expertise.  We disagree.  
Our courts
 have held imputing income to a party who is voluntarily unemployed or
 underemployed is proper.  Patel v. Patel, 359 S.C. 515, 532, 599 S.E.2d
 114, 123 (2004); Penny v. Green, 357 S.C. 583, 592, 594 S.E.2d 171, 175
 (Ct. App. 2004).  To prove voluntary underemployment, a parent seeking to
 impute income to the other parent need not establish a bad faith motivation to
 lower a support obligation.  Arnal v. Arnal, 371 S.C. 10, 13, 636
 S.E.2d 864, 866 (2006).  When imput[ing] income to a parent who is unemployed
 or underemployed, the court should determine the employment potential and
 probable earning level of the parent based on that parents recent work
 history, occupational qualifications, and prevailing job opportunities and
 earning levels in the community.  Engle v. Engle, 343 S.C. 444, 449, 539
 S.E.2d 712, 714 (Ct. App. 2000); 27 S.C. Code Ann. Regs. 114-4720(A)(5)(B)
 (Supp. 2007).  Where a parent voluntarily lessens his or her earning capacity,
 this Court will closely scrutinize the facts to determine the parents earning
 potential, rather than the parents actual income.  Id.; see Camp
 v. Camp, 269 S.C. 173, 174-5, 236 S.E.2d 814, 815 (1977); Robinson v.
 Tyson, 319 S.C. 360, 363, 461 S.E.2d 397, 399 (Ct. App. 1995); see also Chastain v. Chastain, 289 S.C. 281, 283, 346 S.E.2d 33, 35 (Ct. App. 1986)
 (finding father with masters degree voluntarily removed himself from the job
 market to attend law school and his earning potential was properly considered
 in calculating child support).
Here,
 Husband earned approximately
 $100,000 per year managing three Heilig-Myers stores.  The
 parties testified Husband earned at least $4,000 per month while he worked at Norwalk.  Also, Husband filed a loan application indicating he was earning $5,000 per
 month.  After Husband abandoned Norwalk, he began working as a waiter in Myrtle Beach.  A short time later, Husband moved to Florida with his current girlfriend
 where he also works as a waiter.  Husband testified he has applied for jobs,
 but has not found one because he is only looking for upper-level management
 jobs.  Husband has the ability to get a higher paying job than working as a
 part-time waiter because of his experience and knowledge of the furniture
 business; however, he has chosen to remain underemployed.  Therefore, the
 family court did not err by imputing an income of $4,000 per month to
 Husband.                    
II.  Marital Home
Husband
 avers the family court erred in valuing the martial home at $230,000.  We
 disagree. 
The
 family court has broad discretion in determining how marital property is to be
 valued and distributed; therefore, the court may use any reasonable means to
 divide the property equitably, and its judgment will be disturbed only where an
 abuse of discretion is found.  Wooten, 364 S.C. at 541-45, 615 S.E.2d at
 102-05.  In reviewing the family courts equitable apportionment of marital
 property, an appellate courts role is to examine the fairness of the
 apportionment as a whole.  Bragg v. Bragg, 347 S.C. 16, 24, 553 S.E.2d 251, 255
 (Ct. App. 2001).  Generally, an appellate court will affirm the
 family court if it can be determined the judge addressed the factors under the
 marital property statute sufficiently for the appellate court to conclude the
 judge was cognizant of the statutory factors.  Jenkins v. Jenkins, 345 S.C. 88, 100, 545 S.E.2d 531, 537
 (Ct. App. 2001); see S.C. Code Ann. § 20-7-472 (1985).  Further, the family court may accept the valuation of one
 party over another, and the courts valuation of marital property will be affirmed
 if it is within the range of evidence presented.  Woodward v. Woodward,
 294 S.C. 210, 215, 363 S.E.2d 413, 416 (Ct. App. 1987).  
At trial, Wife and her father testified the house was worth about
 $230,000.  Also, Husband listed the house as being worth $230,000 on
 refinancing documents.  Husband did not present any evidence the house was
 worth more than $230,000; therefore, Husband, after making no effort in valuing
 the marital home, cannot now argue the family courts determination is
 unsupported by the evidence.  See Hough v. Hough, 312 S.C. 344,
 347, 440 S.E.2d 387, 389 (Ct. App. 1994) (finding because Husband failed to
 offer values for certain household goods at trial, he could not appeal the
 family courts valuation of those goods).  Furthermore, Husband bears the
 burden in demonstrating the family court committed reversible error.  See Honea v. Honea, 292 S.C. 456, 458, 357 S.E.2d 191, 192 (Ct. App. 1987) (explaining
 the burden is on appellant to show the family court committed reversible error,
 and a party cannot sit back at trial without offering proof, then come to the
 appellate court complaining of the insufficiency of evidence to support the
 family courts findings).  However, Husband provides no evidence that conclusively
 demonstrates the family courts findings are incorrect.  Even assuming the
 family court erred in its valuation of the marital home, Husband fails to
 establish the error was prejudicial to him.  Cox v. Cox, 290 S.C. 245, 248,
 349 S.E.2d 92, 93 (Ct. App. 1986) (stating a party cannot complain of an error that
 his own conduct has induced).  Therefore, the family court did not err by
 determining the marital home was worth $230,000.    
III.  Equitable Division
Husband
 maintains the family court erred in distributing sixty percent of the marital
 property to Wife.  We disagree. 
The division of marital property is within the discretion of the
 family court judge and the judges decision will not be disturbed on appeal
 absent an abuse of discretion.  Craig
 v. Craig, 365 S.C. 285, 290, 617 S.E.2d 359, 361 (2005).  Section
 20-7-472 of the South Carolina Code (Supp. 2007) provides
 fifteen factors for the family court to consider in apportioning marital
 property and affords the family court with the discretion to give weight to
 each of these factors as it finds appropriate.  On appeal, this court looks
 to the overall fairness of the apportionment and it is irrelevant that this court might have weighed specific factors
 differently than the family court.  Greene v. Greene, 351
 S.C. 329, 340, 569 S.E.2d 393, 399 (Ct. App. 2002).  Additionally, [w]hile there is certainly no recognized
 presumption in favor of a fifty-fifty division, we approve equal division as an
 appropriate starting point for a family court judge attempting to divide an
 estate of a long-term marriage.  Doe v. Doe, 370 S.C. 206, 214, 634
 S.E.2d 51, 56 (Ct. App. 2006); see Avery v.
 Avery, 370 S.C. 304, 311, 634 S.E.2d 668,
 672 (Ct. App. 2006).  However, this equal division of marital assets can . . .
 be altered in favor of one spouse depending on the circumstances of each
 case.  Doe v. Doe, 370 S.C. 206, 215, 634 S.E.2d 51, 56 (Ct. App. 2006).
In this case, even though Husband and Wife were married for ten
 years, the family court found, and we agree, Husbands adultery caused the
 breakup of the marriage, and thus, is an appropriate consideration for
 equitable apportionment.  See id. (holding wifes adultery caused
 the breakup of the marriage, and thus, was an appropriate consideration for
 equitable apportionment); Greene, 351 S.C.
 at 341, 569 S.E.2d at 400 (finding the facts and
 circumstances of the case, including Wifes marital misconduct, rendered the
 equal division of marital assets fair and reasonable).  Husbands adultery also
 caused him to abandon Norwalk, which adversely affected the parties economic
 circumstances and the value of their marital estate.  Additionally, in dividing
 the estate, the family court took into consideration that Wife has custody of
 the couples two children.  Therefore, the division was not inequitable and the
 family court did not err in awarding Wife sixty percent of the marital
 property.
IV.  Indemnity
Husband
 contends the family court lacked jurisdiction to order him to indemnify Wife
 against any judgment awarded in the lawsuit brought by Noble Enterprises.  We
 disagree. 
For
 purposes of equitable distribution, a marital debt is a debt incurred for the
 joint benefit of the parties regardless of whether the parties are legally
 liable or whether one party is individually liable.  Wooten, 364 S.C.
 at 546, 615 S.E.2d at 105.  Section 20-7-472(13) of the South Carolina Code (Supp.
 2007) creates a rebuttable presumption that a debt of either spouse incurred
 prior to the beginning of marital litigation is a marital debt and must be
 factored in the totality of equitable apportionment.  Hickum v. Hickum,
 320 S.C. 97, 102, 463 S.E.2d 321, 324 (Ct. App. 1995).  The burden of proving
 a debt is nonmarital rests upon the party who makes such an assertion.  Id. at 103, 463 S.E.2d at 324.  
Here,
 the record clearly indicates Wifes liability to the corporation arose during
 the marriage because Norwalk was formed as a family business.  Accordingly, the
 family court had jurisdiction to identify and apportion this martial debt under
 its general powers to equitably divide a marital estate.  Nevertheless, Husband
 maintains the family court erred in awarding indemnification because Wife
 failed to request such relief in her pleadings.  However, this issue is not
 preserved for review because Husband failed to raise it in his Rule 59(e),
 SCRCP, motion.  See Staubes v. City of Folly Beach, 339 S.C. 406,
 412, 529 S.E.2d 543, 546 (2000) (It is well-settled that an issue cannot be
 raised for the first time on appeal, but must have been raised to and ruled
 upon by the trial court to be preserved for appellate review.).  Therefore,
 the family court did not err by ordering Husband to indemnify Wife against any
 judgment awarded against her.  
V.  Attorneys Fees
Husband
 asserts the family court erred in awarding Wife attorneys fees in the amount
 of $12,800.  We disagree. 
The family court is authorized by statute to award attorneys fees
 in conjunction with marital litigation.  See S.C. Code Ann. § 20-7-420(2) (Supp. 2007).  When determining whether to award attorneys fees, the
 following factors should be considered: (1) the partys ability to pay his or her
 own attorneys fee; (2) the parties respective financial conditions; and (3)
 effect of the attorneys fee on each partys standard of living.  Glasscock
 v. Glasscock, 304 S.C. 158, 161 n.1, 403 S.E.2d 313, 315 n.1 (1991).  If
 the court determines attorneys fees are warranted, the court should consider six
 factors when determining the amount to award: (1) the nature, extent, and
 difficulty of the case; (2) the time necessarily devoted to the case; (3) counsels professional standing; (4) the contingency
 of compensation; (5) the beneficial results obtained; and (6) the customary
 legal fees for similar services.  Id.  The decision to award
 attorneys fees is a matter within the sound discretion of the trial judge and
 the award will not be reversed on appeal absent an abuse of discretion.  Marquez
 v. Caudill, 376 S.C. 229, 246, 656 S.E.2d 737, 745 (2008).
In this case, the family
 court found Wife has no ability to pay her attorneys fees while the Husband,
 having represented himself and with a very substantial earning potential, can
 afford to pay attorneys fees.  Further, the family court thoroughly analyzed
 each of the factors outlined above and detailed its findings in its final
 order.  The courts findings are further supported by the affidavits of Wifes
 counsel submitted to the family court and contained in the record.  Accordingly, we find no abuse of
 discretion in the family courts award of attorneys fees to Wife.
CONCLUSION
Therefore,
 the family courts order is hereby
AFFIRMED.
SHORT
 and KONDUROS, JJ., and CURETON, A.J. concur.

[1] We decide this case without oral argument pursuant to
 Rule 215, SCACR.